# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| MICHAEL FRANCISCO, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | C.A. No.: |
| v. | ) ) | |
| ABENGOA, S.A., SANTIAGO SEAGE, MANUEL SANCHEZ ORTEGA, BARBARA ZUBIRIA and IGNACIO GARCÍA ALVEAR, | ) ) ) ) | |
| Defendants. | ) | |

Plaintiff Michael Francisco ("Plaintiff"), by his attorneys, except for his own acts, which are alleged on knowledge, alleges the following based upon the investigation of counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by Abengoa, S.A. ("Abengoa" or the "Company"), as well as regulatory filings and reports, securities analyst reports and advisories by Abengoa, press releases and other public statements issued by Abengoa, and media reports about Abengoa. Plaintiff believes that additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a securities class action on behalf of all persons who purchased Abengoa American Depositary Shares ("ADS") between November 12, 2014 and August 2, 2015, (the "Class Period"), seeking remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). Plaintiff's claims are asserted against Abengoa and certain of Abengoa's current and former executive officers and directors.

2.      Abengoa is an engineering and clean technology company that purports to apply innovative technology solutions for sustainability in the energy and environment sectors, generating electricity from renewable resources, converting biomass into biofuels and producing drinking water from sea water. Abengoa's business is structured around three activities: engineering and construction; concession-type infrastructures; and industrial production.

3.      Since November 12, 2014, Abengoa and certain of its current and former executive officers and directors have misrepresented the liquidity of the Company's balance sheet in corporate reports filed with the SEC and in conference calls with financial analysts. These misrepresentations artificially inflated the trading price of Abengoa's ADS.

4. On Friday, July 31, 2015, the Company announced its results for the quarter ended June 30, 2015 and held a three-hour long earnings conference call in the afternoon. Among other things, Abengoa lowered its free cash flow guidance and announced a plan to divest 400 million euros in assets.

5. Yet, Defendant Santiago Seage maintained, "the company has no plan to . . . tap the capital markets in any manner."

6. On Monday, August 3, 2015, contrary to Defendant's Seage's July 31, 2015 statement, Abengoa issued a press release announcing a share issuance plan to raise 650 million euros, along with an asset divestiture totaling 500 million euros (100 million euros more than as announced on July 31).

7. As a result of the news, the price of Abengoa's ADS plunged over $5 per share, or 46%, from its closing price of $11.06 on July 31, 2015, to close at $6.00 on August 4, 2015 on unusually heavy trading. This represents an $8.1 billion loss in market cap in the span of two trading days following the unfavorable news.

## JURISDICTION AND VENUE

8. The federal law claims asserted herein arise under §§ 10(b) and 20(a) of the Exchange Act, 15 U.S.C. § 78j(b) and § 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. § 240.10b-5, as well as under the common law.

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and § 27 of the Exchange Act, 15 U.S.C. §78aa.

10. This Court has jurisdiction over each Defendant named herein because each Defendant is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and § 27 of the Exchange Act because the false and misleading statements had significant effects in this District. Abengoa ADS trade on the NASDAQ Global Select Market ("NASDAQ") under the ticker symbol "ABGB."

## PARTIES

12.     Plaintiff purchased Abengoa's ADS as set forth herein and in his certification filed herewith.

13.     Abengoa is a corporation organized and existing under the laws of Spain.  It maintains its principal corporate offices at Campus Palmas Altas, No. 1, Calle Energía Solar, Seville, 41014, Spain.

14.     Defendant Santiago Seage ("Seage") has served as First Vice-Chairman and Chief Executive Officer ("CEO") of Abengoa since May 2015.  He was CEO of Abengoa Yield plc ("ABY" or "Abengoa Yield") from its formation in December 2013 through May 2015. Defendant Seage held other senior management positions at Abengoa since joining the Company in 2005.

15.     Defendant Manuel Sanchez Ortega ("Sanchez Ortega") was the CEO of Abengoa from March 2010 through May 2015 and its First Vice-Chairman from February 2015 through July 2015.  He is currently a member of Abengoa's International Advisory Board.

16.     Defendant Ignacio García Alvear ("Garcia Alvear") has served as Co-Chief Financial Officer ("CFO") for Investor Relations and Capital Markets of Abengoa since February 1, 2015.  Defendant Garcia Alvear joined Abengoa in 1995 and served as the CFO of Abengoa Bioenergy from January 2004 through February 1, 2015.

17.     Defendant Barbara Zubiria ("Zubiria") was Executive Vice President, Capital Markets and Investor Relations of Abengoa from January 2011 through January 2015.

18.     Seage, Sanchez Ortega, Garcia Alvear, and Zubiria are collectively referred to herein as the "Individual Defendants."

19.     Abengoa and the Individual Defendants are collectively referred to herein as "Defendants."

## CONTROL PERSON ALLEGATIONS

20.     By reason of the Individual Defendants' positions with the Company as executive officers (and in Seage's and Sanchez Ortega's cases, as a director as well) the Individual Defendants possessed the power and authority to control the contents of Abengoa's annual and quarterly reports, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market. The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions with the Company, and their access to material, non-public information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading. The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

**Background**

21.     Abengoa purports to be a company that applies innovative technology solutions for sustainability in the energy and environment sectors, generating electricity from renewable resources, converting biomass into biofuels and producing drinking water from sea water.

Abengoa's business is structured around three activities: engineering and construction; concession-type infrastructures; and industrial production.

22.     As stated in the Company's registration statement filed with the SEC on October 4, 2010, Abengoa's "operations are capital intensive and [the Company] operate[s] with a significant amount of indebtedness." Accordingly, Abengoa's financial health, and hence the price of its publicly traded shares, are extremely sensitive to changes in the Company's capital structure.

**The Material Misrepresentations and Omissions**

23.     On November 12, 2014, the beginning of the Class Period, Abengoa held a conference call with financial analysts to discuss the Company's third quarter results. During the conference call, Defendant Zubiria, Abengoa's Executive Vice President, Capital Markets and Investor Relations at that time, discussed the Company's liquidity and leverage. In relevant part, Defendant Zubiria stated:

> From a balance sheet and cash flow perspective, the company has been able to continue delivering on its financial commitments and has been preparing itself for delivery of its leverage and cash flow targets. We have ended the quarter with a pro forma corporate leverage ratio of 2.1 times corporate EBITDA. This amount includes a €250 million approx to be collected from the first ROFO asset sale to Abengoa Yield. We have generated €164 million of free cash flow in the quarter and ***most importantly we have started to see the positive trend that we had anticipated from working capital which has recovered over €250 million of the cash consumed in the first part of the year. We feel therefore confident to reconfirm the debt and cash flow targets for the year.***
>
> ***
>
> One thing that we feel is important to stress again is that when we look at corporate leverage at Abengoa, we need to remember that we now have a listed monetizable asset with a clear market valuation reference together with a very significant remaining equity book value in concessions that will eventually be sold to Abengoa Yield. One cannot look at corporate leverage without considering this. Why? Because we feel that our bondholder or lender is better off having invested in a company holding a large stake in a

6

stable business than in a company with no stake at all. This reasoning is more true – it's part of the investment, has already been monetized. And Abengoa benefits from these features having listed Abengoa Yield this year. Think that the equity book value of our concession investments today is worth more than 4 times the corporate EBITDA and it also represents coverage of 60% of the gross corporate debt and if you include the corporate cash, the coverage is above 100%. We truly believe that this represents a valuable mitigant to the corporate leverage.

***

[W]e have been making progress on our debt repayments as we had anticipated having repaid over €500 million in the period. And that leaves us with no significant refinancing risk until 2016.

(Emphasis added.)

24.     Then, on February 23, 2015, Abengoa held a conference call to discuss the Company's 2014 fourth quarter and full year financial results. During the call, Defendant García Alvear stated, in relevant part:

As liquidity is a counter stone to our financial management we are taking all the necessary steps to enhance it through 2015 and improve the flexibility of our business. So beyond ability of our revolving credit facility in Q1 we have sold an additional stake in ABY pricing to €270 million. At the beginning of the year we have repaid 2017 convertible bond which have put by the investor due to technical reasons.

We are going to repay our 2015 high yield bonds this Wednesday. We might potentially continue reducing the European Commercial Paper program for another €200 million based on our conservative assumptions, although we have already start to rollover the program. To replenish the liquidity buffers and programs after having support the credit liquidity we plan to monetize our investments for a further €1.6 billion based on our plan already shared with the market which consists of the following.

25.     Defendant Sanchez Ortega, the Company's then First Vice-Chairman and Chief Executive Officer, concluded the February 23, 2015 presentation, stating, in relevant part:

After the completion of the strategic milestones that we announced during Q1 *we think our business model is all set to enhance our free cash flow generation and activate virtuous cycle*. APW-1 represents the final step to complete that model as the recurrent equity investment vehicle into our concession pipeline allowing us to limit the equity CapEx and generate increased free cash flow.

(Emphasis added.)

26.     Abengoa continued to lead the market to believe that the Company was successfully improving its liquidity and capital structure by executing its plans in the conference call on May 14, 2015 with financial analysts. During the call, Defendant Sanchez Ortega stated, in relevant part:

> From a financial point of view, we continue to make progress on improving our capital structure and leverage position. Also we confirm the guidance provided earlier in April of an improved working capital balance at the end of this quarter. In terms of leverage, we have reduced our consolidated net debt by EUR800 million versus the end of 2014 and have reached pro forma corporate leverage of 1.5 times after the transactions announced in April May. We have released $214 million of EIG initial payment and we are expecting additional proceeds of approximately EUR200 million.

> \*\*\*

> During these first few months of the year, we have also continued delivering on key strategic actions as we communicated to the market, what we call our to-do list. In March, we signed the final agreement with EIG to constitute APW-1, securing equity partners for our projects under construction. In April, we raised EUR375 million through the issuance of a five-year bond to partially refinance the EUR500 million bond, maturing in February 2016. We continue to work on the rest of the planned initiatives. We will provide additional details further in the presentation. We have reduced our stake in ABY to 51% and already accelerated on our ROFO strategy. We have already de-consolidated ABY and all in all, will keep us on track to transform our balance sheet structure and will get us closer to an increase of our credit ratings.

27.     During the May 14, 2015 call, Defendant Garcia Alvear elaborated and stated, in relevant part:

> Let me dive deeper into our plan to reinforce liquidity during the remainder of the year in the next slide. Starting from our total corporate liquidity position of approximately 3 billion at the end of the first quarter of the year, we have been able to secure already several transactions that keep on supporting the cash position of the company through Q2. EIG entry into ABY has brought EUR460 million while the completion of ROFO 3 has been closed at EUR300 million of net proceeds for the corporate.

> \*\*\*

> Let me remind you that we have the ability of another EUR400 million of undrawn working capital lines facilities, ***an extra cushion that leave us in a very comfortable position to face the needs of the operation of our business and our strategic commitments***.

(Emphasis added.)

28.    Defendant Sanchez Ortega concluded the May 14, 2015 presentation with a focus

on Abengoa's liquidity and capital structure, stating in relevant part:

> Number three, we have taken several actions such as the sale of our stake in ABY, accelerating ROFOs and so on, have improved our liquidity position in others, early conversion of the convertible bond 2019 that have reinforced our capital structure, all these actions with a clear target of improving our credit profile.

> Number four, although we have done a lot so far, we continue committed to achieve positive free cash flow generation and further deleveraging.

> Number five, although it is still early in the year, we have already accomplished a significant part of what we expect and we are very well positioned to achieve our full year 2015 business and financial target.

> And finally, reaching a final agreement with EIG as our long term partner for construction in APW-1 completes the transformation of Abengoa to business model that is ready to deliver our current free cash flow generation. I believe, as I have insisted many times during the last few weeks, I think that Abengoa 3.0 is a reality. It's no longer a project, it's something that we have completed after a significant number of months of very hard work from the entire company and today we can start to benefit from having the right structure to absorb all the growth that we see in the different markets in which the company is positioned.

> Let me tell you that we continue seeing tremendous opportunities in the infrastructure world for both the energy and the water sectors and ***we believe that now we have the adequate structure to be able to grow, we start analyzing the balance sheet of the company, on the contrary with a contribution on the cash flow generation of the company, every time we continue growing in this infrastructure, no matter if it is in the turnkey mode projects or if it is under the concessional mode agreement.***

(Emphasis added.)

**The Truth Emerges**

29.     The truth began to emerge on July 31, 2015, when Abengoa held an earnings conference call to discuss the Company's second quarter 2015 financial results.  The Company announced that it would revise its outlook on free cash flows, with Defendant Seage stating:

> Free cash flow, as we have seen before, we have decided to take a more conservative view after analyzing first half results and after updating our forecasts regarding the second part of the year. That is the reason why we are moving guidance from EUR1.4 billion to a range between EUR6 billion and EUR800,000 million.

30.     In addition, at the July 31, 2015 earnings call, Defendant Garcia Alvear informed investors that Abengoa's working capital was not actually improving, a negative result that was closely correlated with the Company's cash flow problems:

> In summary, corporate free cash flow for the first semester of 2015 has been negatively impacted by negative working capital in line or actually lower than historical seasonality, higher CapEx than expected as a result of delay on contribution from equity partners and its relating investment due to the attractive returns in projects and new project opportunities that have arising during the period.

31.     At the July 31, 2015 earnings call, the Company also announced a plan to divest assets worth 400 million euros.

32.     Yet, even during the July 31 call, Defendant Seage continued to misrepresent the Company's plans and the extent of its liquidity problems, stating, in relevant part: "at this point in time, the company has no plan to do what you were suggesting, to tap the capital markets in any manner."

33.     But then, before trading opened on August 3, 2015, only three days after Seage represented that the Company had no plans "to tap the capital markets in any manner[,]" Abengoa announced that it would hold an extraordinary shareholders meeting to seek approval of a capital increase with pre-emptive rights of 650 million euros and an asset divestiture totaling

500 million euros – 100 million euros more than announced on July 31.  The 6-K filed by the

Company stated, in pertinent part:

ABENGOA, S.A.
FORM 6-K
Abengoa announces a capital raise of €650 million to complement its strategy of
new asset sales
- Abengoa will sell assets for 500 millions euros
- Proceeds will be used to reduce corporate debt and reinforce its balance sheet

August 3, 2015 - Abengoa (MCE: ABG.B/P SM /NASDAQ: ABGB), the
international company that applies innovative technology solutions for
sustainability in the energy and environment sectors, today announced that the
board of directors has unanimously voted to submit to an Extraordinary
Shareholders Meeting the approval of a capital increase with pre-emptive rights of
650 million euros. Proceeds will be used to reduce corporate debt by 300 million
euros, additionally to existing commitments, and to reinforce the balance sheet.
Abengoa's largest shareholder, Inversion Corporativa has stated that it will
participate in the capital raise with new money.

Additionally, Abengoa launched a new plan of divestitures for a total of 500
million euros, including the 400 million euros plan announced on July 31 and
additional divestitures of bioenergy assets. The company expects to obtain all of
the proceeds no later than Q1 2016.

The capital increase and the divestiture program are fully consistent with
Abengoa's strategy explained on July 31:

- Abengoa intends to expand on its asset and capex light Abengoa 3.0 strategy.
- Abengoa will take the actions necessary to reduce its cost of financing and
  reaffirms its commitment to improve its rating.

These new significant actions are a direct response to the higher capex in 2015,
given significantly lower financing expected in the Brazilian transmission lines.

The board of directors will meet today to review and consider the approval of an
updated strategic plan that will include cash flow objectives and maximum capex
limits for the next years, allowing to reach a BB- rating by the end of 2016.

34.     As a result of the news, the trading price of Abengoa's ADS tumbled, on

unusually heavy trading volume – dropping $3.31 per share from its closing price of $11.06 on

July 31, 2015 to close at $7.75 on August 3, 2015, and declining another $1.75 per share the

following trading day, to close at $6.00 on August 4, 2015.  In total, this represents an $8.1 billion loss in market capitalization in the span of just two trading days.

## LOSS CAUSATION

35.     During the Class Period, as detailed herein, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Abengoa's securities and operated as a fraud or deceit on Class Period purchasers of Abengoa securities by materially misleading the investing public. Later, when Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Abengoa's shares fell precipitously, as the prior artificial inflation came out of the price over time. As a result of their purchases of Abengoa's shares during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.*, damages, under the federal securities laws.

## FRAUD-ON-THE-MARKET DOCTRINE

36.     At all relevant times, the market for Abengoa's securities was an efficient market for the following reasons, among others:

a)     Abengoa securities met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

b)     Abengoa filed periodic public reports with the SEC and the NASDAQ; and

c)     Abengoa regularly communicated with public investors via established market communication mechanisms, including regular disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services.

37.     As a result of the foregoing, the market for Abengoa's securities promptly digested current information regarding Abengoa from all publicly available sources and reflected

such information in the prices of the securities. Under these circumstances, all purchasers of Abengoa shares during the Class Period suffered similar injury through their purchase of Abengoa shares at artificially inflated prices and a presumption of reliance applies.

## NO SAFE HARBOR

38.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Abengoa who knew that the statement was false when made.

## CLASS ACTION ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased or otherwise acquired Abengoa securities during the Class Period (the "Class"). Excluded from the Class are Defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

40.     The members of the Class are so numerous that joinder of all members is impracticable, since Abengoa has millions of shares of stock outstanding and because the Company's shares were actively traded on the NASDAQ.  As of August 6, 2015, Abengoa had a public float of more than 947 million shares issued and outstanding. While the exact number of Class members in unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are thousands of members in the proposed Class and that they are geographically dispersed.

41.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members, including:

(a)     whether the Exchange Act was violated by Defendants;

(b)      whether Defendants omitted and/or misrepresented material facts in their publicly disseminated reports, press releases, and statements during the Class Period;

(c)     whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading;

(d)     whether Defendants participated and pursued the fraudulent scheme or course of business complained of herein;

(e)     whether Defendants acted willfully, with knowledge or recklessly in omitting and/or misrepresenting material facts;

(f)     whether the price of Abengoa securities was artificially inflated during the Class Period as a result of the material nondisclosures and/or misrepresentations complained of herein; and

(g)      whether the members of the Class have sustained damages as a result of the decline in value of Abengoa's stock when the truth was revealed, and if so, what is the appropriate measure of damages.

42.      Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct in a substantially identical manner.

43.      Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

44.      A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## CLAIMS FOR RELIEF

### COUNT I
### Violation of Section 10(b) of
### the Exchange Act and SEC Rule 10b-5
### (Against All Defendants)

45.      Plaintiff incorporates by reference each and every preceding paragraph as though fully set forth herein.

46.      This Count is asserted by Plaintiff on behalf of themselves and the Class against all the Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. C 240.10b-5, promulgated thereunder.

47.      During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Abengoa's shares; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Abengoa's shares at artificially inflated prices. In

furtherance of this unlawful scheme, plan, and course of conduct, the Defendants, and each of them, took the actions set forth herein.

48.     Defendants, by the use of means and instrumentalities of interstate commerce: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements made not misleading; and (iii) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers and acquirers of the Company's common stock in an effort to maintain artificially high market prices for Abengoa's shares in violation of Section 10(b) of the Exchange Act and Rule 10-5.

49.     As a result of their making and/or their substantial participation in the creation of affirmative statements and reports to the investing public, Defendants had a duty to promptly disseminate truthful information that would be material to investors in compliance with the integrated disclosure provisions of the SEC, as embodied in SEC Regulation S-K (17 C.F.R. § 229.10, et seq.) and other SEC regulations, including accurate and truthful information with respect to the Company's operations and performance so that the market prices of the Company's publicly traded securities would be based on truthful, complete, and accurate information.  Defendants' material misrepresentations and omissions as set forth herein violated that duty.

50.     Defendants engaged in the fraudulent activity described above knowingly and intentionally or in such a reckless manner as to constitute willful deceit and fraud upon Plaintiff and the Class.  Defendants knowingly or recklessly caused their reports and statements to contain misstatements and omissions of material fact as alleged herein.

51.     As a result of Defendants' fraudulent activity, the market price of Abengoa shares was artificially inflated during the Class Period.

52.     In ignorance of the true financial condition of Abengoa, Plaintiff and other members of the Class, relying on the integrity of the market and/or on the statements and reports of Abengoa containing the misleading information, purchased or otherwise acquired Abengoa's common stock at artificially inflated prices during the Class Period.

53.     Plaintiff and the Class's losses were proximately caused by Defendants' active and primary participation in Abengoa's scheme to defraud the investing public by, among other things, failing to fully and accurately disclose to investors adverse material information regarding the Company. Plaintiff and other members of the Class purchased Abengoa's shares in reliance on the integrity of the market price of those shares, and Defendants manipulated the price of Abengoa's shares through their misconduct as described herein. Plaintiff's and the Class's losses were a direct and foreseeable consequence of Defendants' concealment of the true financial condition of Abengoa.

54.     Throughout the Class Period, Defendants were aware of material non-public information concerning Abengoa's fraudulent conduct (including the false and misleading statements described herein). Throughout the Class Period, Defendants willfully and knowingly concealed this adverse information, and Plaintiff's and the Class's losses were the foreseeable consequence of Defendants' concealment of this information.

55.     As a direct and proximate cause of the Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their respective purchases and sales of Abengoa shares during the Class Period.

**COUNT II**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

56.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

57.     During the Class Period, the Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board of Directors meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded the fact that adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public. Plaintiff and other members of the Class had no access to such information, which was, and remains solely under the control of the Defendants.

58.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware (or recklessly disregarded) that materially false and misleading statements were being issued by the Company and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  Throughout the Class Period, the Individual Defendants were able to, and did, control the contents of the Company's SEC filings, reports, press releases, and other public statements.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed such filings, reports, releases and other statements prior to or shortly after their issuance and had the ability or opportunity to prevent their issuance or to cause them to be corrected.

59.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Abengoa's business, the information contained in its filings with the SEC, and its public statements. Moreover, the Individual Defendants made or directed the making of affirmative statements to securities analysts and the investing public at large, and participated in meetings and discussions concerning such statements. Because of their positions and access to

18

material non-public information available to them but not the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public and that the positive representations that were being made were false and misleading. As a result, the Individual Defendants are responsible for the accuracy of Abengoa's corporate releases detailed herein and is therefore responsible and liable for the misrepresentations contained herein.

60.    The Individual Defendants acted as controlling persons of Abengoa within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Abengoa to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Abengoa and all of its employees. As alleged above, Abengoa is a primary violator of Section 10(b) of the Exchange Act and SEC Rule 10b-5.  By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

61.    As a direct and proximate result of the wrongful conduct of Abengoa and the Individual Defendants, Plaintiff and members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment as follows:

(A)    Declaring this action to be a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and certifying Plaintiff as a representative of the Class and his counsel as Class counsel;

(B)    Awarding Plaintiff and the members of the Class damages, including interest;

(C)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including and attorneys' fees; and

(D)      Awarding such equitable/injunctive or other relief as the Court may deem just and

proper

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 10, 2015                    /s/  Adam M. Apton

**LEVI & KORSINSKY, LLP**
Nicholas I. Porritt
Julia J. Sun
Adam M. Apton
Michael B. Ershowsky (to be admitted)
LEVI & KORSINSKY, LLP
30 Broad Street, 24th Floor
New York, New York 10004
Telephone:  (212) 363-7500
Facsimile:  (212) 363-7171

*Counsel for Plaintiff and Proposed Lead Counsel
for the Class*

CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, MICHAEL FRANCISCO, declare as to the claims asserted under the federal securities laws, as follows:

1. have reviewed this Complaint and authorized its filing;

2. I did not purchase the securities that are the subject of this Complaint at the direction of Plaintiffs' counsel or in order to participate in this litigation;

3. I am willing to serve as a representative party on behalf of the Class, including providing testimony at deposition and trial, if necessary;

4. My transaction(s) in Abengoa S.A. securities which are the subject of this litigation during the class period set forth in the complaint are set forth in the chart attached hereto.

5. During the three years prior to the date of this Certification, I have not participated, nor have I sought to participate, as a representative in any class action suit in the United States District Courts under the federal securities laws.

6. I have not received, been promised or offered, and will not accept, any form of compensation, directly or indirectly, for prosecuting or serving as a representative party in this class action, except for: (i) such damages or other relief as the Court may award to me as my pro rata share of any recovery or judgment; (ii) such reasonable fees, costs or other payments as the Court expressly approves to be paid to or on behalf of me; or (iii) reimbursement, paid by my attorneys, of actual or reasonable out-of-pocket expenditures incurred directly in connection with the prosecution of this action.

I hereby certify, under penalty of perjury, that the foregoing is true and correct. Executed this __th day of August 2015.

Signed:　　　　Michael Francisco
　　　　　　　　2015.08.10
　　　　　　　　06:46:02 -07'00'

NAME:　　　Michael Francisco

Michael D. Fransisco
Transactions in Abengoa, S.A. American Depsitory Shares ("ADS") listed on NASDAQ
During the period November 12, 2014 through July 31, 2015

| Date of Transaction | Buy (B) or Sell (S) | Quantity (#) | Price Per ADS (US$) |
|---|---|---|---|
| 01/12/2015 | B | 200 | 15.56 |
| 03/30/2015 | S | 200 | 18.30 |
| 04/17/2015 | B | 100 | 17.02 |
| 04/17/2015 | B | 200 | 17.05 |
| 07/07/2015 | B | 200 | 15.51 |
| 07/24/2015 | B | 200 | 12.44 |