UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

MICHAEL FRANCISCO, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

– against –

ABENGOA, S.A., SANTIAGO SEAGE, MANUEL SANCHEZ ORTEGA, BARBARA ZUBIRIA AND IGNACIO GARCÍA ALVEAR,

Defendants.

---

DANIEL LAMOUREAUX, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

– against –

ABENGOA, S.A., SANTIAGO SEAGE, MANUEL SANCHEZ ORTEGA, BARBARA ZUBIRIA AND IGNACIO GARCÍA ALVEAR,

Defendants.

---

**OPINION AND ORDER**

15 Civ. 6279 (ER)

15 Civ. 6971 (ER)

---

Ramos, D.J.:

In August and September of 2015, two putative class actions were brought under the federal securities laws against Abengoa, S.A. ("Abengoa" or the "Company") and individual Abengoa executives.  The suits allege that Abengoa, an engineering and clean technology company, made materially false and misleading statements regarding its business and operations. Specifically, the plaintiffs allege that Abengoa misrepresented the Company's capital structure and liquidity in reports filed with the United States Securities and Exchange Commission ("SEC") and in conference calls with financial analysts.  After Abengoa revealed that it in fact had liquidity and cash flow issues, the price of Abengoa shares dropped precipitously.

Pending before the Court are three motions from three distinct Abengoa shareholders or groups of shareholders.  The motions all seek consolidation of the two filed suits.  Each movant also seeks appointment as lead plaintiff and approval of the movant's selected counsel as lead counsel.  The three movants are:  (1) Jesse and Arlette Sherman (the "Shermans"), Doc. 5; (2) PAMCAH-UA Local 675 Pension Fund ("Local 675"), Doc. 8; and (3) Ian Bothwell ("Bothwell"), Doc. 9.[1]

For the reasons set forth below, the Shermans' motion is GRANTED, and Bothwell and Local 675's motions are DENIED.

## I.  BACKGROUND

### A. Factual Background[2]

Abengoa is an engineering and clean technology company that purports to provide innovative solutions for sustainability in the energy and environmental sectors.  Complaint ("Francisco"), Doc. 1, ¶ 2; Complaint ("LaMoureaux"), 15 Civ. 6971, Doc. 1, ¶ 2.  Abengoa's ventures include generating electricity from renewable resources, converting biomass into biofuels, and producing drinking water from sea water.  Francisco ¶ 2; LaMoureaux ¶ 2.

On October 4, 2013, Abengoa filed a Form F-1 registration statement with the SEC. LaMoureaux ¶ 23.  The Company registered 182.5 million class B shares for trading as American Depositary Shares ("ADSs").  *Id.*  The registration statement declares that the Company is "committed to maintaining a sound capital structure and strong liquidity position," and that the Company has "successfully grown [its] business while seeking to enforce strict financial discipline to maintain [its] strong liquidity position."  *Id.* ¶ 24.

---

[1] All docket references are to case number 15 Civ. 6279, unless otherwise noted.

[2] The following facts are based on the allegations set forth in the Francisco Complaint (15 Civ. 6279, Doc. 1) and the LaMoureaux Complaint (15 Civ. 6971, Doc. 1).

On March 19, 2014, the Company filed with the SEC a Form 20-F for the fiscal year ending December 31, 2013. LaMoureaux ¶ 26. In the Form 20-F, Abengoa stated that the Company "believe[s] that [its] existing liquidity and cash flow will be sufficient to meet [its] requirements and commitments for the foreseeable future." *Id.* The Company explained that it "use[s] different tools that have allowed the [C]ompany to generate cash flows from working capital in the past," and that "the use of these tools allows many of [the Company's] projects to be cash flow positive throughout their life." *Id.* ¶¶ 26-27.

On November 12, 2014, Abengoa held a conference call with financial analysts to discuss its third quarter results, as well as the Company's liquidity and leverage. Francisco ¶ 23; LaMoureaux ¶ 29. Defendant Barbara Zubiria, Abengoa's Vice President of Capital Markets and Investor Relations at the time, stated in part that 164 million euros of free cash flow was generated for the quarter and that the Company saw a "positive trend" from working capital, which recovered over 250 million euros consumed in the first part of the year. Francisco ¶ 23; LaMoureaux ¶ 29. Defendant Zubiria concluded that, as a result, Abengoa felt confident reconfirming its debt and cash flow targets for the year. Francisco ¶ 23; LaMoureaux ¶ 29.

On February 23, 2015, Abengoa held a conference call to discuss its fourth quarter and full year financial results for 2014. Francisco ¶ 24; LaMoureaux ¶ 31. During the call, Defendant Manuel Sanchez Ortega, Abengoa's CEO at the time, stated that the Company's business model was "all set to enhance [its] free cash flow generation." Francisco ¶ 25; LaMoureaux ¶ 32. Also on February 23, 2015, Abengoa filed its Form 20-F for the year ending December 31, 2014, once again disclosing that the Company "believe[s] that [its] existing liquidity and cash flow will be sufficient to meet [its] requirements and commitments for the foreseeable future." LaMoureaux ¶ 33.

On May 14, 2015, during a Company conference call with financial analysts, Defendant Ortega stated that the Company continued to make progress improving Abengoa's capital structure and leverage position.  Francisco ¶ 26; LaMoureaux ¶ 36.  Ortega claimed that the Company had reduced its "consolidated net debt" by 800 million euros since the end of 2014. Francisco ¶ 26; LaMoureaux ¶ 36.  Defendant Garcia Alvear, Abengoa's Co-Chief Financial Officer for Investor Relations and Capital Markets, stated that the Company had access to another 400 million euros of "undrawn working capital lines facilities," which provided "an extra cushion" for the Company and put it "in a very comfortable position to face the needs of [its] business and strategic commitments."  Francisco ¶ 27; *see* LaMoureaux ¶ 39.

According to the complaints, the truth about Abengoa's financial situation began to emerge on July 31, 2015, when the Company held a conference call to discuss its financial results for the second quarter of 2015.  Francisco ¶ 29; LaMoureaux ¶ 41.  During the call, Defendant Alvear revealed to investors that Abengoa's working capital had not improved, and the Company announced a plan to divest assets worth 400 million euros.  Francisco ¶¶ 29-31; LaMoureaux ¶¶ 41-43.

Despite the Company's negative outlook, Defendant Santiago Seage, Abengoa's newly appointed Chief Executive Officer, stated that the Company had no plans "to tap the capital markets in any manner."  Francisco ¶ 32; LaMoureaux ¶ 44.  But on August 3, 2015, contrary to Seage's comments, the Company filed a Form 6-K announcing that the board of directors unanimously voted to submit to an Extraordinary Shareholders Meeting the proposal of a capital increase with pre-emptive rights of 650 million euros and the sale of 500 million euros in assets – 100 million euros more than announced on July 31, 2015.  Francisco ¶ 33; LaMoureaux ¶ 45.

The Company further announced that the proceeds from these actions would be used to reduce

corporate debt and to reinforce the Company's balance sheet.  Francisco ¶ 33; LaMoureaux ¶ 46.

As a result of the announcement, the trading price of Abengoa's ADSs dropped $3.31 per

share from its closing price of $11.06 on July 31, 2015, to its closing price of $7.75 on August 3,

2015.  Francisco ¶ 34; LaMoureaux ¶ 48.  The Company's ADSs declined another $1.75 per

share the next day, closing at $6.00 on August 4, 2015, resulting in an aggregate $8.1 billion loss

in market capitalization in two trading days.  Francisco ¶ 34; LaMoureaux ¶ 48.

### B. Procedural Background

Plaintiff Michael Francisco filed his class-action complaint on August 10, 2015

("Francisco Action"), seeking damages for violations of Sections 10(b) and 20(a) of the

Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

Doc. 1.  Plaintiff Daniel LaMoureaux filed his class-action complaint on September 3, 2015

("LaMoureaux Action"), seeking damages on the same grounds.  15 Civ. 6971, Doc. 1.  Both the

Francisco Action and the LaMoureaux Action are brought against the same five defendants:  (i)

Abengoa; (ii) Santiago Seage, Abengoa's current First Vice-Chairman and Chief Executive

Officer; (iii) Manual Sanchez Ortega, a member of Abengoa's International Advisory Board, and

formerly Abengoa's First Vice-Chairman and CEO; (iv) Ignacio Garcia Alvear, Abengoa's Co-

Chief Financial Officer for Investor Relations and Capital Markets; and (v) Barbara Zubiria,

Abengoa's Vice President, Capital Markets and Investor Relations, up until January 2015.

Francisco ¶¶ 13-17; LaMoureaux ¶¶ 14-18.

Both actions are brought on behalf of all persons who purchased or otherwise acquired

Abengoa ADSs on the NASDAQ Global Select Market during the alleged Class Periods.

Francisco ¶ 1; LaMoureaux ¶ 1.  The Francicso Action alleges a Class Period from November

12, 2014 to August 2, 2015.  Francisco ¶ 1.  The LaMoureaux Action alleges a Class Period from

October 17, 2013 to August 2, 2015.  LaMoureaux ¶ 1.

As required by the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §78u-

4(a)(3)(A) (2012), Francisco's counsel published notice over *Globe Newswire* on August 10,

2015, announcing that a securities class action had been filed against Abengoa and the individual

defendants, and advising Abengoa shareholders that they had until October 9, 2015 to file a

motion for appointment as lead plaintiff.  *See* Decl. Adam M. Apton Supp. Sherman Mot. for

Consol., Appt. as Lead Pl. & Approval of Counsel ("Apton Decl."), Doc. 7, Ex. C.  On October

9, 2015, the instant three motions were timely filed in response to the notice.  *See* Docs. 5, 8, 9.

All of the motions seek consolidation of the Francisco and LaMoureaux Actions, and each

movant seeks appointment as lead plaintiff and approval of the movant's selected counsel as lead

counsel.

## II. CONSOLIDATION

Before ruling on the appointment of lead plaintiff and approval of lead counsel, the Court

must first decide whether the Francisco and LaMoureaux Actions should be consolidated

because they are "substantially the same."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii) (2012) ("If more

than one action on behalf of a class asserting substantially the same claim or claims arising under

this chapter has been filed, and any party has sought to consolidate those actions for pretrial

purposes or for trial, the court shall not [appoint a lead plaintiff] *until after* the decision on the

motion to consolidate is rendered.") (emphasis added).

"Rule 42(a) of the Federal Rules of Civil Procedure empowers a trial judge to consolidate

actions for trial when there are common questions of law or fact to avoid unnecessary costs or

delay."  *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  "The trial court has

broad discretion to determine whether consolidation is appropriate." *Id*. at 1284-85. "In assessing whether consolidation is appropriate in given circumstances, a district court should consider both equity and judicial economy." *Devlin v. Transp. Commc'ns Int'l Union*, 175 F.3d 121, 130 (2d Cir. 1999).

Consolidation is merited here. The Francisco and LaMoureaux complaints recite similar or identical statements from Abengoa's SEC disclosures and conference calls with financial analysts, and conclude that the statements were materially false and/or misleading for the same reason – namely, that Abengoa misrepresented its liquidity and capital structure. *Compare* Francisco ¶¶ 21-34, *with* LaMoureaux ¶¶ 24-48. Furthermore, the complaints make near-identical allegations that the truth of these statements emerged in July and August 2015, when Abengoa revealed that it would seek to raise capital through a share issuance plan. *Compare* Francisco ¶¶ 29-34, *with* LaMoureaux ¶¶ 41-48. Courts in this district "routinely consolidate securities class actions arising from the same allegedly actionable statements," as do the instant two actions. *In re Braskem S.A. Sec. Litig.*, No. 15 Civ. 5132 (PAE), 2015 WL 5244735, at *3 (S.D.N.Y. Sept. 8, 2015) (collecting cases). Both complaints also plead the same two claims—violations of Sections 10(b) and 20(a) of the Exchange Act—against the same five defendants. *Compare* Francisco ¶¶ 12-19, 45-61, *with* LaMoureaux ¶¶ 13-20, 60-76. Thus, "[t]he two cases involve sufficiently overlapping questions of law and fact to justify consolidation." *Faig v. Bioscrip, Inc.*, No. 13 Civ. 6922 (AJN), 2013 WL 6705045, at *1 (S.D.N.Y. Dec. 19, 2013). Furthermore, "[a]ll movants seek consolidation and defendants have not opposed the motion for consolidation – *i.e.*, there is little (if any) potential for prejudice." *In re CMED Sec. Litig.*, No. 11 Civ. 9297 (KBF), 2012 WL 1118302, at *2 (S.D.N.Y. Apr. 2, 2012) (citing *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007)).

There is one minor difference between the two complaints, but it does not affect the

Court's determination to consolidate.  The LaMoureaux Action asserts a longer Class Period

(from October 17, 2013 to August 2, 2015) than the Francisco Action does (from November 12,

2014 to August 2, 2015), and thus includes more allegedly false financial statements and more

putative class members.[3]  This difference does not change the substantially similar nature of the

two actions or mitigate the benefits of consolidation.  *See, e.g.*, *Kaplan*, 240 F.R.D. at 91

("Differences in causes of action, defendants, or the class period do not render consolidation

inappropriate if the cases present sufficiently common questions of fact and law, and the

differences do not outweigh the interests of judicial economy served by consolidation."),

*reconsidered on other grounds sub nom. In re IMAX Sec. Litig.*, No. 06 Civ. 6128, 2009 WL

1905033 (S.D.N.Y. June 29, 2009); *see also, e.g.*, *In re CMED*, 2012 WL 1118302, at *2 (same).

Accordingly, the Court consolidates the Francisco and LaMoureaux Actions.  All future

filings in this case shall be filed in the 15 Civ. 6279 case number and bear the same caption as

that case number.  The LaMoureaux Action, 15 Civ. 6971, shall be closed.

## III. APPOINTMENT OF LEAD PLAINTIFF

The PSLRA governs motions for the appointment of lead plaintiffs of putative class

actions brought under federal securities laws.  *See, e.g.*, *In re Braskem*, 2015 WL 5244735, at *4.

The PSLRA instructs the Court to "appoint as lead plaintiff the member or members of the

purported plaintiff class that the court determines to be most capable of adequately representing

the interests of class members."  15 U.S.C. § 78u-4(a)(3)(B)(i) (2012).  The statute sets forth a

rebuttable presumption "that the most adequate plaintiff . . . is the person or group of persons"

---

[3] "The Court will use the longest-noticed class period – *i.e.*, [October 17, 2013 through August 2, 2015]—as it encompasses more putative class members."  *In re CMED*, 2012 WL 1118302, at *2 (citing *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 402-03 (S.D.N.Y. 2003)).

that (i) "has either filed the complaint or made a motion in response to" public notice of the filing

of the class action, (ii) "has the largest financial interest in the relief sought by the class," and

(iii) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  §

78u-4(a)(3)(B)(iii)(I).  This presumption is rebutted "only upon proof by a member of the

purported plaintiff class" that the presumptively most-adequate plaintiff "will not fairly and

adequately protect the interests of the class" or "is subject to unique defenses that render such

plaintiff incapable of adequately representing the class."  § 78u-4(a)(3)(B)(iii)(II).

All of the parties seeking appointment as lead plaintiff have satisfied the first requirement

by filing a timely motion in response to public notice of this suit.

The next, most critical question is which party seeking lead-plaintiff status has the largest

financial interest in the relief sought by the putative class.  The PSLRA does not specify a

method for calculating which plaintiff has the "largest financial interest," and neither the

Supreme Court nor the Second Circuit has articulated such a method.  *In re Fuwei Films Sec.*

*Litig.*, 247 F.R.D. 432, 436 (S.D.N.Y. 2008); *see also In re Olsten,* 3 F.Supp.2d at

295.  However, courts in this Circuit have adopted a four-factor test, first promulgated in *Lax v.*

*First Merchants Acceptance Corp.,* No. 97 Civ. 2715, 1997 WL 461036 (N.D. Ill. Aug. 11,

1997), and later in *In re Olsten,* 3 F.Supp.2d at 295 (the "Olsten-Lax Factors"), to assess a

plaintiff's financial interest:

> (1) the total number of shares purchased during the class period;
>
> (2) the net shares purchased during the class period (in other words, the difference between the number of shares purchased and the number of shares sold during the class period);
>
> (3) the net funds expended during the class period (in other words, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and

(4) the approximate losses suffered.

*Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, No. 14 Civ. 10020 (RMB), 2015 WL

1345931, at *2 (S.D.N.Y. Mar. 19, 2015) (quoting *Foley v. Transocean Ltd.*, 272 F.R.D. 126,

127-28 (S.D.N.Y. 2011)).  "Of these factors, courts have consistently held that the fourth, the

magnitude of the loss suffered, is most significant."  *In re Braskem*, 2015 WL 5244735, at *4

(collecting cases).

Applying these factors, the Court finds that the Shermans clearly have the largest

financial interest in this case.  The Shermans claim $152,728.59 in financial losses, Doc. 7, Ex.

B, whereas Local 675 claims $110,770.97, Doc. 12, Ex. 2, and Bothwell claims $18,058.65, Doc.

11, Ex. D.  Each of the other three Olsten-Lax Factors also weighs in the Shermans' favor.  As

demonstrated by the chart below, not only did the Shermans suffer the greatest loss, but they also

purchased more gross and net shares, and expended more funds than the other movants:

|  | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | Approximate Loss |
|---|---|---|---|---|
| **Shermans** | 153,000 | 14,709 | $198,386.23 | $152,728.59 |
| **Local 675** | 8,300 | 8,300 | $158,464.43 | $110,770.97 |
| **Bothwell** | 1,858 | 1,858 | $27,870.00 | $18,058.65 |

*Compare* Doc. 7, Ex. B, *with* Doc. 12, Ex. 2, *and* Doc. 11, Ex. D; *see* Shermans' Opp. to

Competing Mots. for Appt. as Lead Pl. & Approval of Lead Counsel, Doc. 15, at 2.

Local 675 argues that the Shermans have overstated their total loss, because they "appear

to have improperly excluded gains and losses," resulting from trading they conducted during the

Class Period.  Mem. Further Supp.  Local 675's Mot. for Consol., Appt. as Lead Pl. & Approval

of Lead Counsel & Opp. to Competing Mots. ("Local 675 Opp."), Doc. 16, at 3.  The Shermans'

true loss, according to Local 675, is $116,973.00, just $6,202.03 greater than Local 675's.  *Id.*

Regardless of which loss calculation is correct, however, there is no doubt that the Shermans

have the largest financial interest in this litigation.  Their gross purchases are significantly

greater than Local 675's; their net shares are almost twice the amount purchased by Local 675;

their net funds expended is approximately a quarter more than the funds expended by Local 675;

and whether the Court adopts the Shermans' loss calculation or Local 675's, the Shermans'

approximate losses are greater than that of Local 675's.  Indeed, Local 675 has itself conceded

that "the Shermans' financial interest in the litigation is . . . more than Local 675's."  *See id.*

Local 675 argues, nonetheless, that "the benefit of having an institutional investor [like

Local 675] lead the Class should not be outweighed by such a minimal difference in losses."  *Id.*

Local 675 is correct to point out that institutional investors are "the type of investor Congress

prefers as lead plaintiff."  *In re Braskem*, 2015 WL 5244735, at \*5; *see also, e.g.*, *Glauser v.*

*EVCI Ctr. Colls. Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was

passed . . . to increase the likelihood that institutional investors would serve as lead plaintiffs in

actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33

(S.D.N.Y. 2005)).  However, even if the difference in losses were considered *de minimis*, Local

675 has not provided any authority suggesting that its status as an institutional investor can

overcome the presumption of adequacy accorded to the Shermans as the plaintiffs who

undeniably have the largest financial interest in this case.[4]

---

[4] Local 675 cites two cases to argue that when the difference in financial loss between two plaintiffs is minimal, the court should appoint an institutional investor over an individual investor to lead the class.  However, the cases Local 675 relies on are inapposite.  In *Police & Fire Retirement System v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 WL 7952453 (S.D.N.Y. Feb. 21, 2007), the fourth Olsten-Lax Factor (loss suffered) weighed in favor of one movant by a mere two percent margin, but the other three factors favored another movant, who was an institutional investor. The court held that although the loss suffered factor is sometimes considered more relevant than the other factors, that factor alone, particularly when the difference in loss suffered is so minimal, "cannot dictate such an important result."  *Id.* at \*2.  Thus, the court found in favor of the institutional investor, not because of their status as an institutional investor, but because three out of the four Olsten-Lax Factors weighed in the institutional investor's favor, with the fourth factor just out of reach.  In this case, *none* of the factors weigh in favor of Local 675.

Local 675 also cites *In re Doral Financial Corp. Securities Litigation*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006), in which the court found that an institutional investor would be "the more adequate and preferable" of two plaintiffs, in spite of it having suffered "slightly lower" losses.  However, in that case the Court found that "the relative

The Shermans must still "satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure" in order to be appointed lead plaintiffs.  § 78u-4(a)(3)(B)(iii)(I)(cc).  Federal Rule of Civil Procedure 23(a) sets forth four requirements for class certification:  (1) the class is so numerous that simple joinder is impracticable; (2) there exist questions of fact and law common to the whole class; (3) the claims of the lead plaintiff are typical of the claims of the whole class; and (4) the lead plaintiff and counsel will adequately represent the interests of all class members.  *See* Fed. R. Civ. P. 23(a).  "When deciding competing motions to be appointed lead plaintiff under the PSLRA, however, a court need not conduct a full analysis of whether the requirements of Rule 23 have been met."  *Faig*, 2013 WL 6705045, at *3.  "Rather, '[a]t this stage of the litigation, a moving plaintiff must only make a preliminary showing that the adequacy and typicality requirements have been met.'"  *Id.* (quoting *Jambay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010)); *see also, e.g.*, *Bo Young Cha v. Kinross Gold Corp.*, No. 12 Civ. 1203 (PAE), 2012 WL 2025850, at *6 (S.D.N.Y. May 31, 2012).

"The typicality requirement is satisfied when the class members' claims 'arise [ ] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *11 (S.D.N.Y. Mar. 19, 2012) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  The Shermans' claims here are typical:  They arise from purchases made in reliance on the same alleged misstatements and omissions that the complainants and other movants base their claims on, and they also seek the same relief, based

---

magnitude of each of the parties' losses [was] fuzzied by various competing estimates, unclear methodology, and myriad proposed class periods."  *Id.*  The *Doral* court concluded that "given the probable margins of error involved in the various damages estimates," the two remaining investors under consideration had "roughly equal damages," and thus the institutional investor should be appointed lead plaintiff.  *Id.*  Here, as Local 675 has conceded, the Shermans have clearly suffered a greater financial loss.

on the same legal theories. *See* Mem. Supp. Shermans' Mot. for Consol., Appt. as Lead Pl. &

Approval of Lead Counsel ("Shermans' Br."), Doc. 6, at 10-11. Furthermore, "[n]o party or

movant has contested [the Shermans'] typicality." *In re Braskem*, 2015 WL 5244735, at *6.

The Shermans have also made a sufficient showing of adequacy under Rule 23(a)(4).

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced, and

generally able to conduct the litigation; (2) there is no conflict between the proposed lead

plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest

in the outcome of the case to ensure vigorous advocacy.'" *Sallustro v. CannaVest Corp.*, No. 14

Civ. 2900 (PGG), 2015 WL 1262253, at *10 (S.D.N.Y. Mar. 19, 2015) (quoting *Kaplan*, 240

F.R.D. at 94). The Shermans have retained Levi & Korsinsky LLP ("Levi & Korsinsky"),

competent and experienced counsel with extensive experience in these types of securities class

actions. *See* Shermans' Br. at 12 (noting Levi & Korsinsky's "extensive experience in

successfully prosecuting complex securities class actions such as this one."); *infra* IV.

Furthermore, no party or movant argues that Levi & Korsinsky has any interests antagonistic to

other class members, nor has the Court identified any. Indeed, the Shermans' large financial

losses will likely motivate it to pursue this litigation vigorously on behalf of all class members.

*See Sallustro*, 2015 WL 1262253, at *10.

As a result of its timely filing, its large financial stake, the typicality of its claims, and the

adequacy of its representation, the Shermans are entitled to a presumption that they are the "most

adequate plaintiff[s]." § 78u-4(a)(3)(B)(iii)(I). That presumption stands unrebutted, because no

other class member has come forth with proof that the Shermans "will not fairly and adequately

protect the interests of the class" or is subject to "unique defenses" that render it incapable of

adequately representing the class. § 78u–4(a)(3)(B)(iii)(II).[5] The Court therefore appoints the Shermans as lead plaintiffs.

## IV. APPROVAL OF LEAD COUNSEL

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." § 78u-4(a)(3)(B)(v). "There is a 'strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection.'" *Sallustro*, 2015 WL 1262253, at \*10 (quoting *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529 (LMM), 2008 WL 4128702, at \*2 (S.D.N.Y. Sept. 3, 2008)).

The Shermans have moved for approval of Levi & Korsinsky as lead counsel. Shermans' Br. at 12. No party or movant has objected to the proposed selection. After reviewing the Shermans' submission detailing Levi & Korsinsky's track record, the Court, like many others in this Circuit before it, concludes that the firm is qualified to serve as lead counsel of the class. *See* Pelton Decl., Ex. D at 5 (listing securities class action cases in which Levi & Korsinsky was appointed lead or co-lead counsel). Accordingly, the Court approves Levi & Korsinsky as lead counsel.

---

[5] Local 675 contends that the Shermans should not serve as lead plaintiffs because they "have not represented that they have any experience supervising counsel in a complex manner such as this case," nor have they demonstrated "any ability to adequately represent the Class." Local 675 Opp. at 3-4; Reply Mem. Further Supp. Local 675's Mot. for Consol., Appt. as Lead Pl. & Approval of Lead Counsel & Resp. to Shermans' Opp., Doc. 18, at 2. However, the Shermans' presumption as the most adequate plaintiffs can only be rebutted upon "proof" by a class member that the Shermans "will not fairly and adequately protect the interests of the class" or that they are subject to "unique defenses" that would render them incapable of adequately representing the class. Thus it is Local 675 that has the burden of proving that the Shermans would not be adequate lead plaintiffs. Yet, Local 675 has not provided *any* evidence bearing on the Shermans' ability to fairly and adequately protect the interests of the class. Local 675 has therefore failed to rebut the presumption that the Shermans are the most adequate plaintiffs in this case.

## V. CONCLUSION

For the aforementioned reasons, the motions to consolidate are GRANTED. All future filings in this case shall be filed in the 15 Civ. 6279 case number and bear the same caption as that case number. All related actions subsequently filed in, or transferred to, this District shall be consolidated into the 15 Civ. 6279 case number, absent order of the Court. The Clerk of the Court is respectfully directed to close the 15 Civ. 6971 case and terminate any pending motions in that case.

Additionally, the Shermans' motion for appointment as lead plaintiffs and approval of lead counsel, Doc. 5, is GRANTED. Bothwell and Local 675's motions for appointment as lead plaintiff and approval of lead counsel, Docs. 8, 9, are DENIED. The Clerk of the Court is respectfully directed to terminate the motions, Docs. 5, 8, 9, in the 15 Civ. 6279 case.

It is SO ORDERED.


Dated:     May 24, 2016
           New York, New York

                                                   _____
                                                   Edgardo Ramos, U.S.D.J.