# EXHIBIT "B"

ADMINISTRACION DE JUSTICIA

**JUZGADO CENTRAL DE INSTRUCCION N° 002**
**MADRID**
**AUDIENCIA NACIONAL .- C/ GARCÍA GUTIERREZ S/N PLANTA 3ª**
**Tfno: 917096527/28/33/32**
**Fax: 917096541**

**NIG: 28079 27 2 2016 0000410**
GUB11

**DILIGENCIAS PREVIAS PROC. ABREVIADO 0000010 /2016**

# AUTO

En Madrid, a 3 de febrero de 2020.

## ANTECEDENTES DE HECHO

**PRIMERO.-** La presente causa se inició por la interposición de querella, de fecha 22 de marzo de 2016, presentada por MARÍA JOSÉ BUENO RAMIREZ, Procuradora de los Tribunales y de **IÑIGO MAC-CROHON PADILLA, MARÍA ISABEL TUÑON LARA, JUAN FRANCISCO CALLEJÓN ARROYO, MARÍA CRISTINA LÓPEZ LÓPEZ, DANIEL SUREDA REAI, YOLANDA ALONSO GONZÁLEZ, JOSE LUIS VILLA SABATELL, IGNACIO SILGADO MAESTRE, CARMEN GOYTRE CASTRO, ANTONIO CATALÁ RIPOLI, JUAN RAMÓN RODRIGUEZ ALCALÁ, JUAN ALFONSO CALVO MAGALÓN, JULIO IGNACIO BURDIEL GARCÍA, ISABEL RODRIGUEZ RUBIO, MANUEL ARTILLO REMBADO, RUBEN TABOAS ARAUJO, RICARDO FERNÁNDEZ TAPIAS, FRANCISCO GIMÉNEZ LORENTE y las mercantiles EUREXTRA S.L. y PATATUS SLU**, (miembros de la "PLATAFORMA DE PERJUDICADOS POR ABENGOA S.A"), por la presunta comisión de delito societario tipificado en el artículo 290 del Código Penal, y delito de falsedad en la inversión de capital o falsedad en la inversión en los mercados de valores, tipificado en el art 282 bis del Código Penal, contra **Felipe BENJUMEA LLORENTE Y MANUEL SANCHEZ ORTEGA,** que fue admitida a trámite por Auto de fecha 2 de febrero de 2017.

En concreto, las presentes Diligencias Previas fueron incoadas a fin de averiguar si las óptimas cifras que reflejaban los estados financieros de ABENGOA y su idílica situación patrimonial y financiera difundida por sus administradores con anterioridad a su colapso financiero (que en noviembre de 2015 les llevó a presentar la solicitud de pre-concurso) eran o no contrarias a la realidad financiera y económica de la compañía.

**SEGUNDO.-** Con posterioridad han sido practicadas las diligencias derivadas de la admisión a trámite de la querella interpuesta, así como las diligencias complementarias que fueron acordadas con el resultado obrante en las actuaciones.

**TERCERO.-** Con fecha 26 de diciembre de 2019, por la Procuradora Sra. María José Bueno Ramírez en representación de **JOSÉ LUIS VILLA SABATELL y 217 más**, todos ellos integrantes de la "PLATAFORMA DE PERJUDICADOS POR ABENGOA S.A" se presentó escrito solicitando la AMPLIACIÓN DE LA QUERELLA frente a:

1. **ABENGOA S.A.** y las Consejeras y miembros de su Comisión de Auditoría **Mercedes GRACIA DÍEZ** y **Alicia VELARDE VALIENTE**;
2. La sociedad de auditoría de las cuentas de ABENGOA, **DELOITTE S.L.**;

ADMINISTRACION DE JUSTICIA

3. Así como su socio responsable de la auditoría **Manuel ARRANZ ALONSO**.

Asimismo, en el referido escrito se solicita la práctica de nuevas diligencias documentales, testificales y ratificación de informes, enumeradas en el apartado VII del mismo, y que se dan aquí por reproducidas en aras a la economía procesal.

**CUARTO.-** Conferido traslado al Ministerio Fiscal para informe por proveído de fecha 30 de diciembre de 2019, se emite dictamen en fecha 23 de enero de 2020 del tenor literal siguiente:

*"**EL FISCAL,** despachando el traslado conferido por providencia de 30 de diciembre de 2019, recaída en las DP n° 10-16, en relación con la solicitud formulada por la representación procesal de la "Plataforma de perjudicados por Abengoa" mediante escrito de 23-12-19 a fin de ampliar la querella contra la entidad "ABENGOA S.A." y las consejeras y miembros de su comisión de auditoría Dª Mercedes Gracia Diez y Dª Alicia Velarde Valiente, así como contra la entidad "DELOITTE, S.L." y su socio responsable de la auditoría de la primera Manuel Arranz Alonso, dice que NO SE OPONE sobre la base de los argumentos expuestos en el referido escrito de la parte querellante.*

*Efectivamente, a lo largo de la tramitación de la presente causa se han podido concitar elementos de juicio bastantes como para considerar en este estado de la causa y sin perjuicio de ulterior calificación, la posible alteración contable con efectos perjudiciales para sus socios, accionistas y/o terceros de las cuentas correspondientes, al menos; a los ejercicios 2014 a 2016 de las cuentas anuales de "Abengoa, S.A." y determinadas sociedades dependientes ("ABENGOA SOLAR, S.A." Y "ABENGOA BIOENERGÍA, S.A."). A tal efecto, y a pesar de las dificultades y obstáculos que se han ido planteando para recabar la documentación que parece apuntar en la señalada dirección, existen datos indiciarios reflejados en el informe pericial aportado por la parte querellante de los que se colige la sistemática ocultación de sustanciales pérdidas (deterioros) de sus activos así como la inclusión de certificaciones de obras no suficientemente acreditadas que han determinado una notable alteración de la real apariencia de la situación económico-financiera de la entidad.*

*Las sospechas que se cernían al respecto, aparentemente, se han materializado tanto en concretas operaciones contables de ocultación como de afloramiento de activos inexistentes de tal calado que exigen las pertinentes aclaraciones por vía de justificación documental, preponderantemente A tal efecto basta con dar lectura a la resolución del "Instituto de Contabilidad y Auditoría de Cuentas" (ICAC) de fecha 20-2-18, profusamente analizado en el escrito de ampliación de querella, lo cual, unido al resto de diligencias practicadas y, singularmente, a ¡as declaraciones prestadas por los únicos imputados hasta la fecha, cuyas explicaciones acerca de la causa determinante de la quiebra de la entidad que dirigían quedan significativamente en entredicho.*

*Conforme a la hipótesis planteada con sólidos argumentos por parte del querellante, se evidencia la perentoria necesidad de reclamar de las entidades implicadas las pertinentes respuestas a los interrogantes que se plantean acerca de las lagunas halladas en los trabajos de auditoría de las cuentas de "ABENGOA" del ejercicio 2014 desarrolladas por "DELOITTE, S.L.".*

*Los hechos, en este estado de las actuaciones, podrían integrar delitos de falseamiento de cuentas que reflejan la situación económica de la sociedad en perjuicio de la misma, sus socios*

ADMINISTRACION DE JUSTICIA

*o terceros y delito de estafa de inversores tipificados en los artículos 290 y 282 bis, respectivamente, del Código penal.*

*Efectivamente, respecto del tipo delictivo previsto en el artículo 290 del Código penal, se precisa de un grosero (en el sentido de significativo) falseamiento de las cuentas de tal calibre que altere, en términos mercantiles, la imagen fiel de la entidad hasta el punto de que sea idónea para causar el perjuicio económico exigido en el tipo.*

*La existencia de una alteración se establece por comparación con lo que debería haber constado en los documentos falseados, de manera que es necesario que conste cuál debería haber sido la imagen correcta emanada de aquéllos. A estos efectos reviste especial importancia la prueba pericial aportada por la parte y su exhaustivo análisis, a falta de otras explicaciones y/o documentación que permita llenar las lagunas apreciadas a fin de desterrar toda duda al respecto.*

*Por lo que se refiere al sujeto activo del citado ilícito penal, la condición de administrador de. hecho o de derecho es insoslayable; sin embargo, en este sentido hay que traer a colación la doctrina jurisprudencial elaborada al respecto (vb. Sentencias del Tribunal Supremo n° 94/2018, de 23 de febrero, n° 228/2016, de 17 de marzo o n° 749/2017, de 21 de noviembre) que, en resumidas cuentas, incluye a todo aquél que, en la parcela correspondiente, ostenta un dominio del hecho que le capacita para su intervención decisiva en el falseamiento que se pena.*

*Por ello, no es exigible ni el nombramiento para un cargo, ni tampoco el desempeño del mismo para afirmar la responsabilidad del titular respecto de todas las conductas que se ejecuten en ámbito de su competencia, de la misma manera que el solo hecho de integrar el consejo de administración "no determina la responsabilidad por los hechos delictivos acordados en el mismo o en los ejecutados por otros consejeros, aunque constituya un indicio, de especial significación que debe ser valorado " (STS n° 749/2017, de 21 de noviembre). Todo ello de conformidad con el espíritu que preside el Real Decreto Legislativo 1/2010, de 2 de julio), por el que se aprueba el texto refundido de la Ley de Sociedades de Capital (artículo 236-4).*

*En este sentido, la ampliación de la querella a las personas físicas responsables directos de las parcelas de auditoría tanto externa como interna a la entidad no sólo tiene fundamento, sino que es prudente.*

*Por lo que se refiere al delito tipificado en el artículo 282 bis del Código penal, es preciso concretar sus presupuestos fácticos, objetivos y subjetivos. Frente a posicionamientos excesivamente rigoristas que harían ineficaz la aplicación práctica del precepto, el Tribunal Supremo ha elaborado una interpretación más flexible del supuesto de hecho y fundamentalmente del elemento subjetivo del tipo de manera que no es imprescindible acreditar que la mecánica falsaria se efectuó con la inequívoca voluntad de engañar a los posibles inversores respecto de una concreta operación de salida al mercado de activos societarios cuyo valor está manipulado al alza, sino qué basta con falsear las informaciones que la sociedad debe publicar y difundir conforme a la legislación del mercado de valores sobre sus recursos, actividades y negocios presentes y futuros, con. el propósito de captar inversores u obtener financiación. Y, para la determinación de la concurrencia del elemento subjetivo del injusto (captar inversores), basta con acreditar la actuación objetiva; es decir, la sola remisión de la contabilidad falseada al alza al organismo encargado de su control, aval y difusión como es la Comisión Nacional del Mercado de Valores, encargado, además, de la protección de los inversores. Todo ello sin perjuicio de la concreta exposición de resultados*

ADMINISTRACION DE JUSTICIA

*en el mercado de las energías renovables reseñadas en el apartado 65 (folio 65) del escrito de ampliación de querella.*

*En este sentido hay que tener presente que este delito se incluye en la Sección 3ª del Capítulo XI del Título XIII del Libro II del Código penal, dedicada a los delitos contra el mercado y los consumidores, por lo que el bien jurídico puede identificarse con el derecho de quienes operan en esos mercados a la transparencia de los mismos y a recibir información veraz sobre las sociedades existentes en ellos.*

*Por todo ello y sin perjuicio del análisis que ahora no procede realizar acerca de la posible concurrencia concursal normativa de los tipos penales descritos, lo cierto es que lo datos recabados hasta el momento .permiten considerar la existencia de indicios de tipicidad penal de uno y otro, lo cual, por otra parte, lleva a otra consecuencia relacionada con la garantía de la situación jurídico- procesal de las entidades mercantiles involucradas en cuanto a que sólo está prevista la posible responsabilidad penal en la que podrían incurrir las mismas en el delito contemplado en el artículo 282 bis del Código penal (artículo 288 del Código penal).*

*Es por ello por lo que, conforme a lo señalado en el artículo 31 bis y 288 del Código penal, es preciso acceder a la imputación formal de las mercantiles "ABENGOA S.A." y "DELOITTE, S.L." en los términos del artículo 119 en relación con los artículos 118-5 y 775 de la Ley de Enjuiciamiento Criminal.*

*De esta manera, no sólo se garantiza la salvaguarda de sus derechos sino que se les da la oportunidad de acreditar la concurrencia de los requisitos de exención de responsabilidad penal señalados en el artículo 31 bis-2 y 4 del Código penal o de atenuación de la misma en los términos del artículo 31 quater del Código penal.*

*Por todo ello, y sobre la base tanto de lo anteriormente expuesto como de la exhaustiva argumentación desarrollada por la acusación particular, el Fiscal entiende que procede. admitir la ampliación de querella en los términos solicitados.*

***Por lo que respecta a las diligencias practicadas,*** *en consonancia con lo señalado,* ***NO SE OPONE*** *al considerar que las mismas son oportunas, útiles y adecuadas para la instrucción de la causa, sin perjuicio de las siguientes matizaciones:*

*-respecto a* ***las testificales*** *identificadas como* ***2.1,*** *2.2 y 2.6, toda vez que la declaración que se propone tiene su fundamento en su intervención como profesionales con específicos conocimientos técnico-contables y en relación con concretos informes elaborados por ellos, su citación habrá de serlo en calidad de peritos.*

*-Respecto de la* ***testifical n° 2.4,*** *entendemos que habrá de estar condicionada al resultado de la prueba documental identificada como 1.4.*

*-Por lo que se refiere a la* ***documental n° 1.4,*** *consideramos que se ha de extender a cualesquiera modificaciones contractuales acordadas con posterioridad a su firma y, específicamente, se habrá de aportar la firmada el día 30-4-2014 (identificada en el apartado 30 (folio 32) del escrito de ampliación de querella).*

*-En cuanto a la* ***pericial*** *que se propone, dada la fase procesal en la que nos encontramos, en este momento el Fiscal* ***no la considera pertinente…"***

QUINTO.- Con fecha 13 de enero de 2020 por la representación procesal de la querellada Felipe BENJUMEA LLORENTE y en fecha 16 de enero de 2020 por la representación procesal de la querellada Antonio Manuel SANCHEZ ORTEGA se presentan sendos escritos oponiéndose a

ADMINISTRACION DE JUSTICIA

la ampliación de la querella planteada en base a las alegaciones que se dan aquí pro reproducidas en aras a la economía procesal.

## FUNDAMENTOS DE DERECHO

PRIMERO.- El art. 312 de la Ley de Enjuiciamiento Criminal establece: *"Cuando se presentare querella, el Juez de instrucción, después de admitirla si fuere procedente, mandará practicar las diligencias que en ella se propusieren, salvo las que considere contrarias a las leyes, o innecesarias o perjudiciales para el objeto de la querella, las cuales denegará en resolución motivada". Por su parte, el art 313 LECrim únicamente autorizará la desestimación de la querella "cuando los hechos en que se funde no constituyan delito, o cuando no se considere competente para instruir el sumario objeto de la misma".*

Al analizar los hechos relatados en la ampliación de querella debemos tener en cuenta las siguientes premisas sobre el llamado *ius ut procedatur* en materia criminal: solo si los hechos relatados en la querella presentan inicialmente caracteres delictivos puede iniciarse un procedimiento penal. Como expresa el ATS de 26 de mayo de 2009, "*la presentación de una querella no conduce de manera forzosa o ineludible a la incoación de un procedimiento penal. Para ello es precisa una inicial valoración jurídica de la misma, estableciendo en tal sentido el art. 312 de la Ley de Enjuiciamiento Criminal que la querella deberá admitirse si fuere procedente, y disponiendo el art. 313 que habrá de desestimarse cuando los hechos en que se funde no constituyan delito. Valoración inicial que debe hacerse en función de los términos de la querella, de manera que si estos, como vienen formulados o afirmados, no son delictivos, procederá su inadmisión en resolución motivada. Sólo si los hechos alegados, en su concreta formulación, llenan las exigencias de algún tipo penal debe admitirse la querella sin perjuicio de las decisiones que posteriormente procedan en función de las diligencias practicadas en el procedimiento*".

Este es, asimismo, el criterio reiteradamente expuesto por el TC (STC 138/1997) cuando declara que debe distinguirse entre aquellos supuestos en los que la resolución judicial no excluya *ab initio* en los hechos denunciados las notas características de lo delictivo, y aquellos otros en que sí las excluya. En el primer caso existe un *ius ut procedatur* conforme al cual deben practicarse las actuaciones necesarias de investigación. No así, por el contrario, en aquellos casos en los que el órgano judicial entiende razonadamente que la conducta o los hechos imputados, suficientemente descritos en la querella, carecen de ilicitud penal.

SEGUNDO.- En el presente caso, la solicitud formulada por la representación procesal de la "Plataforma de perjudicados por Abengoa" de ampliación de querella se basa principalmente en:

1. **El informe, que acompañan como documento nº 2 emitido por el Economista y Auditor de Cuentas Juan José SILVA NAVARRETE**, hoy director de la firma forense "SILVA&ASOCIADOS" emitido en fecha XXXX, en el cual, se refleja la sistemática ocultación de sustanciales perdidas (deterioros) de los activos así como la inclusión de certificaciones de obras no suficientemente acreditadas que han determinado una notable alteración de la real apariencia de la situación económico-financiera de la entidad Abengoa S.A., en particular en dicho informe se concluye que:

- *Aquellos* ***deterioros contabilizados en 2015 y 2016 debieron*** *haber sido registrados (reconocidos), en cantidades de eminente relevancia material, al menos* ***desde el ejercicio 2014*** *y por el contrario fueron mantenidos deliberadamente* ***ocultos para dar***

ADMINISTRACION DE JUSTICIA

*una apariencia irreal del estado patrimonial y situación financiera de la compañía, todo ello en perjuicio de numerosos inversores que invirtieron sus ahorros confiados en la veracidad de la información financiera transmitida por ABENGOA.*

- *Las cuentas anuales consolidadas y también individuales de ABENGOA S.A. y sociedades dependientes (en particular, de las sociedades cabecera de los segmentos Solar y Bioenergía del Grupo, ABENGOA SOLAR, S.A. y ABENGOA BIOENERGÍA, S.A.) correspondientes a los **ejercicios 2014 y 2015 no reflejan la imagen fiel de su situación financiera**, así como del resultado de sus operaciones.*
- *Corolario de lo anterior, **carece de todo fundamento y razonabilidad la causa del derrumbe de ABENGOA transmitida por los querellados en su declaración**, consistente en una puntual necesidad de liquidez de 650.-M€ que no se pudo obtener en una ampliación de capital por culpa de los bancos al no asegurarla.*

2. **Resolución de fecha 20 de febrero de 2018 del INSTITUTO DE CONTABILIDAD Y AUDITORIA DE CUENTAS (ICAC)** dictada en el Expediente Sancionador instruido a raíz de una denuncia formulada el día 27 de octubre de 2016 por la “ASOCIACIÓN DE PERJUDICADOS DE ABENGOA” frente a la sociedad de auditoría de las cuentas de ABENGOA, DELOITTE S.L. y su socio Manuel ARRANZ ALONSO.

Por la parte querellante, se alega que las graves deficiencias de auditoría e incorrecciones materiales de las cuentas de ABENGOA que pone de relieve la Resolución sancionadora del ICAC, acometidas con la inestimable colaboración de los responsables de auditoría de DELOITTE y por supuesto de la propia compañía se evidencian en base a lo siguiente:

**A. INDICIOS DE FALSEDAD DETECTADOS EN EL ÁREA DE RECONOCIMIENTO DE INGRESOS PROCEDENTES DE LA ACTIVIDAD DE INGENIERÍA Y CONSTRUCCIÓN DE ABENGOA CON EL BENEPLÁCITO Y ANUENCIA DE LOS AUDITORES.**

**En primer lugar**, la Resolución del ICAC pone de relieve que DELOITTE y su socio auditor Sr. ARRANZ no han obtenido evidencia suficiente y adecuada en el reconocimiento de ingresos procedentes de la actividad de ingeniería y construcción (ICI) de ABENGOA por un importe que asciende a **4.514,49M€**, que representa el **63,14% de la cifra de negocios** del grupo, a pesar de que (evidentemente, dada la magnitud) valoraron el riesgo en dicha área de reconocimiento de ingresos como **riesgo significativo de fraude.**

En definitiva, los auditores no verificaron la corrección y fiabilidad de ingresos registrados en las cuentas de ABENGOA del ejercicio 2014, procedentes de la actividad de ingeniería y construcción, que representan una magnitud del 63,14% de su cifra de negocios, a través de la obligada obtención de evidencia adecuada y suficiente que permita constatar que se encontraban libres de incorrecciones materiales debido a fraude.

**En segundo lugar**, el ICAC señala la falta de obtención por los auditores de evidencia suficiente y adecuada de la razonabilidad y fiabilidad de las estimaciones del “margen” atribuido por la Dirección de ABENGOA a sus proyectos comprendidos en la muestra tomada para su análisis por los auditores que representaba el 30% aproximado de la cifra de negocios y cuya selección, además, no era acorde a las normas técnicas de auditoría al haberse realizado con base a datos de septiembre 2014 y no del cierre del ejercicio.

En definitiva, como señala el ICAC, los auditores:

- No seleccionaron correctamente, conforme a las normas técnicas de auditoría de obligada aplicación, la muestra de proyectos de ABENGOA para su análisis y revisión, al encontrarse la misma conformada con datos a 30 de septiembre y del cierre del

ADMINISTRACION DE JUSTICIA

ejercicio 2014; y, de la muestra seleccionada de proyectos, que representa el 30% de la cifra de negocios del grupo,

- No verificaron la corrección y fiabilidad de las estimaciones del margen de los proyectos y costes pendientes de incurrir asignado por la Dirección de ABENGOA mediante la obtención de evidencias adecuadas y suficientes que permita constatar la inexistencia de fraude, a pesar de reconocer su potencial riesgo significativo de fraude.

En tercer lugar, el ICAC destaca además en su Resolución una **grave y patente incorrección material en los estados financieros de la compañía**, que no pasó desapercibida por los auditores, sino que sorprendentemente la avalaron, esto es, la **ilícita alteración al alza, en un 14,7%, del margen de beneficio del proyecto A3T de ABENGOA** (una central de cogeneración) **que supuso:**

- Unos ingresos en 2014 de 528 millones de euros, lo que representa un 26% del total de ingresos reconocidos ese año 2014 por construcción de activos concesionales, y, derivado de ello,
- Un beneficio injustificado de explotación en las cuentas anuales de 2014 de ni más ni menos que 218m€; cifra esta más de cuatro veces superior al límite de materialidad fijado por los propios auditores en 50.000.000 €, susceptible por ello de afectar muy significativamente a la imagen fiel de la compañía trasladada al mercado, hasta el punto de que el resultado de beneficios del ejercicio por importe de 125,300.000 €, debió ser en verdad de pérdidas por importe de 92,700.000 €.

La Resolución considera probada la falta de obtención de evidencia suficiente y adecuada en el reconocimiento de ingresos procedentes de la actividad de ingeniería y Construcción (ICI) por importe de 4.514.496 miles de euros, es decir, el 63,14% del importe neto de la cifra de negocios del grupo, así como la incorrección del registro de un beneficio de 218 millones de euros en los estados financieros consolidados del ejercicio 2014, que es superior a la cifra de importancia relativa fijada en 50 millones de euros por los auditores a efectos de la emisión del informe.

En definitiva, el ICAC pone de relieve en su Resolución la existencia de **irregularidades que afectan de manera incontestable a la imagen fiel que la hoy ya querellada ABENGOA trasladaba al mercado en sus cuentas del ejercicio 2014 con el aval de la co-querellada DELOITTE** y que cabe resumir en:

1.- **La absoluta falta de justificación soporte obtenida por los auditores de ingresos registrados en las cuentas de ABENGOA por importe de 4.514,490.000 € equivalente a un 63,14% de su cifra de negocios**;

2.- **La absoluta falta de justificación soporte obtenida por los auditores que avale la razonabilidad del margen de beneficio atribuido por ABENGOA a sus proyectos y costes registrados en los mismos, por cifras de alcance material también significativo: una muestra de proyectos de 2.215.000.000 € equivalente a otro 30% de su cifra de negocios** (aunque seleccionada de manera sesgada, con base a datos de septiembre y no del cierre del ejercicio).

3.- **La grave manipulación al alza del margen de beneficio del proyecto A3T que supuso un injustificable beneficio de 218.000.000 € registrado en las cuentas consolidadas de ABENGOA, con significativa incidencia en el resultado del ejercicio trasladado al mercado.**

ADMINISTRACION DE JUSTICIA

## B. INDICIOS DE FALSEDAD DETECTADAS EN EL ÁREA DE FINANCIACIÓN AJENA DE ABENGOA CON EL BENEPLÁCITO Y ANUENCIA DE LOS AUDITORES

En el área de financiación ajena, de la Resolución sancionadora del ICAC se desprende la existencia de otras dos graves irregularidades:

- Incumplimiento del covenant de un contrato de préstamo sindicado derivado, entre otros motivos, de la clasificación incorrecta de deuda de ABENGOA por importe de 1.200.000.000 €, que conllevaba la exigibilidad inmediata de las entidades prestamistas de 880.200.000 €, lo que hubiera provocado inmediatamente la inviabilidad y colapso financiero de ABENGOA mucho tiempo antes de que se reconociera ocultándolo tras datos falsos;
- Burda manipulación de la capacidad de endeudamiento reflejada al cierre del ejercicio 2014: cancelación el 31 de diciembre de 2014 de 500.000.000 € de préstamo sindicado y su nueva disposición el 2 de enero de 2015.

En consecuencia, la Resolución del ICAC establece que los auditores "*no han reflejado en la documentación correspondiente a estos trabajos de auditoría evidencia suficiente y adecuada que les permitiera justificar la conclusión sobre la razonabilidad de la clasificación de la deuda como sin recurso en proceso aquí analizada (correspondiente a los bonos de Abengoa Greenfieldy el tramo B del préstamos sindicado), no resultando soportada la conclusión de que esta deuda cumpliera con las tres características exigidas en el contrato de préstamo de modo que resultara justificada la exclusión a efectos del cumplimento del covenant. En este sentido, no resulta reflejo alguno de las verificaciones que debieron realizarse acerca del cumplimiento de los requisitos especificados en el contrato de préstamo sindicado que justificasen la exclusión del cómputo como deuda financiera neta a los efectos de cumplimiento del covenant. La actuación de los auditores resulta reprochable habida cuenta que ellos mismos son los que califican la comprobación de estas cuestiones como riesgos significativos*".

En definitiva, afirma la querellante existen sólidos indicios para constatar cómo la friolera de 1.200.000.000 €, que sumaban la emisión de bonos verdes y el tramo B del préstamo sindicado, fueron injustificadamente excluidos del cómputo de deuda financiera neta a fin de **ocultar el incumplimiento del *covenant* con el grave efecto en la propia viabilidad de ABENGOA como empresa en funcionamiento.**

Según la querellante, el tiempo y la labor investigadora de este Juzgado han acabado dando la razón a las fundadas sospechas que motivaron la querella, y junto con el resto de evidencias puestas de manifiesto en el escrito de ampliación de querella, también el ICAC pone de relieve en su Resolución la existencia de graves irregularidades que afectan de manera incontestable a la imagen fiel de ABENGOA trasladada al mercado, como sin duda lo son:

- La ocultación al mercado del incumplimiento del ratio financiero (*covenant*) estipulado en el contrato de préstamo sindicado de 30 de septiembre de 2014, que acarreaba el derecho de las entidades prestamistas a exigir el reembolso inmediato de 880.200.000 €, con el consiguiente efecto en la liquidez y solvencia de la compañía y riesgo **palmario de continuidad de sus operaciones como empresa enfuncionamiento;**
- **La incorrecta clasificación de deuda trasladada al mercado por importe de 1.200.000.000 €** (*500.000.000 € de la emisión de bonos verdes realizada el 30 de septiembre de 2014 por ABENGOA GREENFIELD y 700.000.000 € del tramo B del préstamo sindicado de igual fecha*), **a fin de excluirla del cálculo del *covenant* y al tiempo reportar un ratio de apalancamiento muy inferior al real, como alertó FITCH**

ADMINISTRACION DE JUSTICIA

**en su nota de 14 de noviembre de 2014 (señalando que el ratio era ¡el doble! al que reportaba porque excluía del cálculo su denominada "deuda sin recurso en proceso");**

- **La ocultación al mercado del incumplimiento del ratio financiero (*covenant*) estipulado también en los contratos para la financiación de proyectos de las filiales ABENER ENERGÍA, S.A. e INABENSA, S.A., que acarreaba el derecho de las entidades prestamistas a exigir el reembolso inmediato de 344.4000.000 y 304.000.000 €, respectivamente, con el consiguiente efecto en la viabilidad de los proyectos;**
- **La fraudulenta maniobra de cancelación el 31 de diciembre de 2014 del saldo de 500.000.000 € dispuesto del referido préstamo sindicado y su nueva disposición el primer día hábil del ejercicio 2015** (2 de enero) **para mostrar al mercado en las cuentas de 2014 una imagen de fortaleza y capacidad de endeudamiento irreal.**

A la vista de lo expuesto, alega el querellante dolo en la ocultación de la situación financiera de una compañía, y no faltan razones para evidenciar la procedencia de la ampliación de querella que nos ocupa frente a **ABENGOA** como también frente a:

- DELOITTE S.L. y su socio Manuel ARRANZ ALONSO, máximos responsables de la auditoría externa de las cuentas de ABENGOA,
- Mercedes GRACIA DÍEZ y Alicia VELARDE VALIENTE, responsables durante años del "proceso de información financiera y de los sistemas de control interno de la Compañía", del "desarrollo de la auditoría de cuentas" y de la supervisión del "proceso de elaboración y la integridad de la información financiera relativa a la Compañía" conforme al Reglamento de Auditoría Interna de ABENGOA por su inestimable complicidad y colaboración con los actuales querellados (los máximos responsables de la gestión de la compañía, Sres. BENJUMEA y SÁNCHEZ ORTEGA) para acometer la grave alteración y presunta falsedad de la realidad económico-financiera y patrimonial ocultada a los miles de inversores que decidieron invertir sus ahorros en la compañía, llevándoles a representarse una realidad diametralmente distinta a la verdadera, hasta el punto de que donde habían expectativas de beneficios y dividendos en verdad habían pérdidas de tal magnitud que se hizo insostenible viéndose obligada a reconocer su situación de insolvencia, de la que sólo pudo salir con quitas de hasta el 97% y esperas de diez (10) años.

**3.-** Además del informe (aludido en el punto1) y la resolución del ICAC (aludida en el punto 2), la parte querellante destaca **los informes de las firmas "ALTRAN" y "MAC GROUP"** aportados por la ABOGACÍA DEL ESTADO en el procedimiento arbitral SCC2013/094 instado en el "INSTITUTO DE ARBITRAJE DE LA CÁMARA DE COMERCIO DE ESTOCOLMO" por la filial de ABENGOA "CSP EQUITY INVESTMENT S.A.-R.L" contra el REINO DE ESPAÑA en reclamación de 840.000.000 € por la pérdida de valor en sus seis plantas solares ubicadas en España (*Helioenergy 1 y 2, Solaben 2 y 3 y Solacor 1 y 2*) derivada de la reforma energética del Gobierno a finales de 2013. Así en concreto:

- **El informe emitido por "ALTRAN" y "MAC GROUP" el 15 de octubre de 2014** aportado con la contestación a la demanda de la ABOGACÍA DEL ESTADO pone de manifiesto la existencia de "***CLARAS CONTRADICCIONES ENTRE LA INFORMACIÓN PUBLICADA POR LA PROPIA ABENGOA Y LA SUMINISTRADA EN SU INFORME***"
- El **informe emitido por "ALTRAN" y "MAC GROUP" de 7 de junio 2017** pone igualmente de relieve la **elocuente divergencia entre el daño reclamado y la inexistencia de su obligado reflejo contable en las cuentas de la compañía.**

ADMINISTRACION DE JUSTICIA

En definitiva, si ABENGOA entró en situación de insolvencia de la noche a la mañana, si los bancos no aseguraron la ampliación de capital por importe de 650.000.000 € fue porque las cuentas de ABENGOA reflejaban una realidad bien distinta a su verdadera situación económico-financiera y patrimonial durante el tiempo en que estuvo administrada por los Sres. BENJUMEA y SÁNCHEZ ORTEGA, controlada la COMISIÓN DE AUDITORÍA por las dos Consejeros hoy querelladas, Sras. GRACIA DÍEZ y VELARDE VALIENTE, y auditada sin salvedades por **DELOITTE** y por el Sr. ARRANZ ALONSO.

**TERCERO.** Efectivamente, y de conformidad con el Ministerio Fiscal, a lo largo de la tramitación de la presente causa se han podido concitar elementos de juicio bastantes como para considerar en este estado de la causa y sin perjuicio de ulterior calificación, la posible alteración contable con efectos perjudiciales para sus socios, accionistas y/o terceros de las cuentas correspondientes, al menos, a los ejercicios 2014 a 2016 de las cuentas anuales de Abengoa, S.A. y determinadas sociedades dependientes (ABENGOA SOLAR, S.A. y ABENGOA BIOENERGÍA, S.A.).

Del estado de la presente causa, y particularmente del informe aportado por la querellante, se pone de manifiesto la existencia de indicios de los que cabe colegir la sistemática ocultación de sustanciales pérdidas de sus activos, así como la inclusión de certificaciones de obras no suficientemente acreditadas que han determinado una notable alteración de la real apariencia de la situación económico-financiera de la entidad.

La resolución del ICAC de 20.02.2018, apreciada junto al resto de diligencias practicadas y, singularmente, las declaraciones prestadas por los únicos investigados hasta la fecha, cuyas explicaciones acerca de la causa determinante de la quiebra de la entidad que dirigían quedan significativamente en entredicho, evidencian que han existido concretas operaciones contables de ocultación como de afloramiento de activos inexistentes de tal calado que exigen las pertinentes aclaraciones por vía de justificación documental, preponderantemente. Extremo que da soporte a la perentoria necesidad de reclamar de las entidades implicadas las pertinentes respuestas a los interrogantes que se plantean acerca de las lagunas halladas en los trabajos de auditoría de las cuentas de ABENGOA del ejercicio 2014 desarrolladas por DELOITTE, S.L.

Estos hechos, en este estado de las actuaciones, podrían integrar delitos de falseamiento de cuentas que reflejan la situación económica de la sociedad en perjuicio de la misma, sus socios o terceros y delito de estafa de inversores tipificados en los artículos 290 y 282 bis, respectivamente, del Código penal.

Ahora bien, el delito que únicamente podrá imputarse a las personas jurídicas querelladas es la estafa de inversores tipificado en el art. 282 bis CP, conforme a lo dispuesto en el art. 288 CP. No así el delito de falsedad contable tipificado en el art. 290 CP, por cuanto conforme a lo dispuesto en el art. 31 bis CP las personas jurídicas solo serán responsables penalmente "en los supuestos previstos en este Código", entre los que no se encuentran el delito de falsedad contable prevenido en el art. 290 CP.

En primer lugar, respecto del **tipo delictivo prevenido en el art. 290 CP**, se precisa de un grosero (en el sentido de significativo) falseamiento de las cuentas de tal calibre que altere, en términos mercantiles, la imagen fiel de la entidad hasta el punto de que sea idónea para causar el perjuicio económico exigido en el tipo.

La existencia de una alteración se establece por comparación con lo que debería haber constado en los documentos falseados, de manera que es necesario que conste cuál

ADMINISTRACION DE JUSTICIA

debería haber sido la imagen correcta emanada de aquéllos. A estos efectos reviste especial importancia la informe aportado por la parte y su exhaustivo análisis, a falta de otras explicaciones y/o documentación que permita llenar las lagunas apreciadas a fin de desterrar toda duda al respecto.

La condición de sujeto activo la define "el dominio sobre la vulnerabilidad jurídico-penalmente relevante del bien jurídico", lo que exige considerar que, en este tipo de delitos especiales, la característica constitutiva es "el dominio que los sujetos activos ejercen sobre la concreta estructura social en la que el bien jurídico se halla necesitado de protección y el Derecho penal, a través de semejantes tipos, protege". Hay que tener en cuenta que ocultar o suprimir datos es una forma "de faltar a la verdad en la narración de los hechos", y por otra, "que el administrador tiene el deber jurídico de cumplir con su cometido con la diligencia de un ordinario empresario y de su representante leal", lo que, implícitamente, y en términos generales, le obliga "a ser veraz con la información que suministra sobre la sociedad".

En este sentido, tal y como expresa el Ministerio Fiscal, la ampliación de la querella a las personas físicas responsables directos de las parcelas de auditoría tanto externa como interna a la entidad no sólo tiene fundamento, sino que es prudente.

En segundo lugar, por lo que respecta al **delito previsto y penado en el art. 282 bis CP**, dicho tipo penal, castiga a "*los que, como administradores de hecho o de derecho de una sociedad emisora de valores negociados en los mercados de valores, falsearan la información económico-financiera contenida en los folletos de emisión de cualesquiera instrumentos financieros o las informaciones que la sociedad debe publicar y difundir conforme a la legislación del mercado de valores sobre sus recursos, actividades y negocios presentes y futuros, con el propósito de captar inversores o depositantes, colocar cualquier tipo de activo financiero, u obtener financiación por cualquier medio*". Tal y como expresa la STS de 22.07.2019 La conducta típica, en el tipo objetivo, consiste en falsear la información económico-financiera. No se sanciona, pues, a quien la pública o difunde o la remite a otros para su publicación o difusión, sino a quien la falsea. Son elementos del tipo que esa información se refiera a los recursos, actividades y negocios presentes y futuros de la sociedad; que la información se refiera a una sociedad emisora de valores negociados en los mercados de valores; que se trate de información contenida en los folletos de emisión de cualesquiera instrumentos financieros o de las informaciones que la sociedad debe publicar y difundir conforme a la legislación del mercado de valores. A diferencia de lo que ocurre en el artículo 290 CP, no se exige que el falseamiento de la información sea idóneo para causar un perjuicio al inversor o financiador. Sin embargo, ha de entenderse que, como ocurre en general con los delitos básicos de falsedad documental, quedan excluidas las falsedades burdas incapaces por sus propias características, de alterar el tráfico jurídico. Ha de apreciarse, por lo tanto, una mínima capacidad de la información falseada para captar la inversión o el crédito. Y en el tipo subjetivo es necesario el dolo, que debe abarcar la falsedad de la información, y un elemento finalista consistente en la finalidad de obtener una aportación de capital.

*Prima facie*, los hechos relatados en la querella, bajo el soporte del informe acompañado, ponen de manifiesto por la existencia de infracciones graves en los trabajos de auditoría de las cuentas de ABENGOA del ejercicio 2014, derivadas de la falta de obtención de evidencia suficiente y adecuada de la realidad publicada en las mismas respecto a las áreas de ingresos de la actividad de ingeniería y construcción y financiación ajena, todo ello en los gravísimos términos que veremos en detalle. Dicho informe destaca la existencia de deterioros

contabilizados en 2015 y 2016 que debieron haber sido registrados, en cantidades relevantes, al menos desde el ejercicio 2014 y habrían sido mantenidos deliberadamente ocultos para dar una apariencia irreal del estado patrimonial y situación financiera de la compañía. Situación que derivaría en un evidente perjuicio de quienes invirtieron en la confianza de la veracidad de la información financiera transmitida por ABENGOA. Tampoco las cuentas anuales, tanto consolidadas como individuales, de ABENGOA S.A. y sociedades dependientes (en particular, ABENGOA SOLAR, S.A. y ABENGOA BIOENERGÍA, S.A.) correspondientes a los ejercicios 2014 y 2015 reflejarían la imagen fiel de su situación financiera, ni como del resultado de sus operaciones. El informe, tras un análisis de los estados financieros de aquellas sociedades cabecera del segmento SOLAR y BIOENERGÍA, sostiene que ABENGOA S.A. debió reconocer con anterioridad al ejercicio 2015 que esas compañías no tenían valor alguno, registrando los referidos gastos por "deterioro" de valor y consiguientes pérdidas que hasta entonces vino ocultando al mercado. Las pérdidas recurrentes de dichas sociedades cabecera al menos desde el ejercicio 2012 ascenderían a un importe total de 1.246.000, y los préstamos participativos que desde el año 2012 fue concediendo la matriz (ABENGOA S.A.) a dichas sociedades cabecera que en 2015 sumaban 951.000.000 € (ABENGOA BIOENERGÍA, S.A. 695.000.000 euros y ABENGOA SOLAR, S.A. 256.000.000 euros para que no entrara en causa legal de disolución y tener que liquidarlas. Asimismo, los deterioros de ABENGOA SOLAR, S.A. y ABENGOA BIOENERGÍA, S.A., valoradas a cero euros en 2015, implicaría que las propias filiales de aquellas sociedades cabecera que desarrollan los proyectos (que en 2015 estaban registradas en balance por la friolera de 2.806.000.000 euros) tampoco tenían valor alguno y, por tanto, tuvieron que haber sido deteriorados en su totalidad, así como que los créditos concedidos por las sociedades cabecera a sus propias filiales (que en 2015 ascendían a 2.501.800.000 euros) no podían ser devueltos en su totalidad, por lo que tendrían que haberse deteriorado en la parte correspondiente. Sin embargo, ABENGOA habría decidido ocultar al mercado estas pérdidas determinantes, manteniendo su balance de manera sobrevalorada para así influir en la toma de decisión de sus potenciales inversores.

CUARTO. La responsabilidad penal de las personas jurídicas es introducida en el Código penal por la LO 5/2010 con el fin de impulsar que las entidades corporativas implantasen mecanismos para impedir la realización de hechos delictivos en su provecho tanto por sus representantes, directivos y administradores como, por el resto de empleados jerárquicamente sometidos a aquéllos. Tras la reforma del CP operada por la LO 1/2015 se despeja cualquier duda de que la adopción de medidas de prevención verdaderamente eficaces y en los términos legalmente previstos –a través de programas de *corporate compliance*, expresivos del compromiso empresarial con una cultura de cumplimiento–, permite eximir de responsabilidad penal a la corporación si, pese a la implementación de un modelo de organización preventivo eficaz, cualquiera de las personas físicas integradas en la entidad a las que se refieren las letras a) y b) del artículo 31 bis 1 CP realiza un hecho delictivo eludiendo fraudulentamente los mecanismos de prevención.

El CP ha establecido un sistema de doble vía de imputación de la responsabilidad penal a la persona jurídica. La primera vía de imputación, prevista en la letra a) del artículo 31 bis 1, determina que el ente corporativo será responsable de aquellos delitos cometidos por quienes ostentan facultades de dirección, administración o representación, "en nombre o por cuenta de la persona jurídica, y en su beneficio directo o indirecto". La segunda vía de imputación, prevista en la letra b) del referido precepto, determina la responsabilidad penal de la entidad colectiva por los delitos cometidos, "en el ejercicio de actividades sociales y por cuenta y en beneficio directo o indirecto de las mismas, por quienes, estando sometidos a la

autoridad de las personas físicas mencionadas en el párrafo anterior, han podido realizar los hechos por haberse incumplido gravemente por aquéllos los deberes de supervisión, vigilancia y control de su actividad atendidas las concretas circunstancias del caso".

De acuerdo con la jurisprudencia del Tribunal Supremo en torno a la responsabilidad penal de las personas jurídicas (SSTS 514/2015, de 2 de septiembre; 154/2016, de 29 febrero; 221/2016, de 16 marzo; 516/2016, de 13 de junio; 742/2016, de 6 de octubre, 827/2016, de 3 de noviembre; 31/2017, de 26 de enero; 121/2017, de 23 de febrero; y 583/2017, de 19 de julio), para apreciar la misma, en primer lugar han de ser constatados los "dos primeros requisitos previstos en el artículo 31 bis CP": que se haya cometido por parte de una persona física alguno de los delitos incluidos en el catálogo de infracciones susceptibles de generar responsabilidad penal para la persona jurídica, y que la referida persona física, autora material del delito, esté integrada en la entidad colectiva. En segundo lugar, es preciso determinar "si el delito cometido por la persona física en el seno de aquélla ha sido posible, o facilitado, por la ausencia de una cultura de respeto al Derecho, como fuente de inspiración de la actuación de su estructura organizativa e independiente de la de cada una de las personas físicas que la integran, que habría de manifestarse en alguna clase de formas concretas de vigilancia y control del comportamiento de sus directivos y subordinados jerárquicos, tendentes a la evitación de la comisión por estos de los delitos enumerados en el Libro II del Código Penal como posibles antecedentes de esa responsabilidad de la persona jurídica.

Por tanto, la responsabilidad penal de la persona jurídica pivota sobre el «papel» que desempeña la existencia en el seno de la persona jurídica de adecuados mecanismos de vigilancia y control idóneos para impedir, o al menos prevenir, la comisión de delitos por parte de las personas físicas vinculadas a la corporación. De acuerdo con el pronunciamiento mayoritario de la STS 154/2016, es precisamente la ausencia de medidas de control eficaces para la evitación de la comisión de delitos "el núcleo de la responsabilidad de la persona jurídica", y ello "más allá de la eventual existencia de modelos de organización y gestión" adecuados para prevenir o reducir de forma significativa el riesgo de su comisión (los denominados *corporate compliance* o modelos de cumplimiento), que bajo ciertos presupuestos legalmente previstos podrían dar lugar a la exención de responsabilidad penal del ente colectivo, o a la atenuación de la pena cuando dichos presupuestos sólo se justificaren parcialmente.

En el caso que nos ocupa las mercantiles ABENGOA S.A y DELOITTE S.L., conforme a lo expuesto, no son un mero instrumento del delito, siendo, por tanto, auténticos sujetos de derechos y obligaciones, y por tanto deben adquirir el estatus jurídico procesal de investigado con los derechos y garantías inherentes al mismo, por su presunta participación en los hechos puestos de manifiesto en la presente resolución, por si los mismos fueren constitutivos de un delito contemplado en el art. 282 bis CP.

En cuanto a la mercantil ABENGOA S.A., los hechos descritos en la ampliación de querella se habrían cometido por las Consejeros y miembros de su comisión de auditoría Mercedes Gracia Díez y Alicia Velarde Valiente, en el ejercicio de actividades sociales y por cuenta y en beneficio directo o indirecto de las mismas.

Por lo que a la responsabilidad que DELOITTE S.L. se refiere, la Ley 22/2015, de 20 de julio, de Auditoría de Cuentas, alude en su Preámbulo que "*esta actividad, por su contribución a la transparencia y fiabilidad de la información económico financiera de las empresas y entidades auditadas, constituye un elemento consustancial al sistema de economía de mercado recogido*

ADMINISTRACION DE JUSTICIA

*en el artículo 38 de la Constitución. Así, se configura como aquella que, mediante la utilización de determinadas técnicas de revisión, tiene por objeto la emisión de un informe acerca de la fiabilidad de la información económica financiera auditada, sin que se limite a la mera comprobación de que los saldos que figuran en sus anotaciones contables concuerdan con los ofrecidos en las cuentas que se auditan, ya que las técnicas de revisión y verificación aplicadas permiten, con un alto grado de certeza, dar una opinión técnica e independiente sobre la contabilidad en su conjunto y, además, sobre otras circunstancias que, afectando a la vida de la empresa, no estuvieran recogidas en dicho proceso*".

Como indica la STS 94/2018, "*no sería correcto reducir la trascendencia de la labor de los auditores en el control de la corrección de las cuentas de las sociedades. Es cierto que no son ellos quienes las elaboran y formulan; también lo es que no les corresponde garantizar su exactitud. Pero también lo es que su función opera como un elemento de seguridad para terceros ajenos a la misma sociedad respecto a si las cuentas se han preparado y presentado según las normas aplicables, en la medida en que, como dice textualmente el artículo 1 de la Ley 19/1988, de auditoría de cuentas vigente al tiempo de los hechos, consiste en "verificar y dictaminar si dichas cuentas expresan la imagen fiel del patrimonio, de la situación financiera y de los resultados de la entidad auditada, de acuerdo con el marco normativo de información financiera que le sea aplicable*". La Ley 22/2015, actualmente vigente, dispone en su art. 1 que "*Se entenderá por auditoría de cuentas la actividad consistente en la revisión y verificación de las cuentas anuales, así como de otros estados financieros o documentos contables, elaborados con arreglo al marco normativo de información financiera que resulte de aplicación, siempre que dicha actividad tenga por objeto la emisión de un informe sobre la fiabilidad de dichos documentos que pueda tener efectos frente a terceros*". Pues bien en el caso de autos existe una sanción por parte del Instituto de Contabilidad y Auditoría de Cuentas, máximo órgano en materia de normalización y Planificación contable contable así como de control de la actividad de auditoría de cuentas, en Resolución de 20 de febrero de 2018, que sancionó a Deloitte S.L., y a su socio, el también querellado Manuel Arranz Alonso, por la comisión de dos infracciones graves en sus trabajos de auditoría de las cuentas de ABENGOA del ejercicio 2014, derivadas de la falta de obtención de evidencia suficiente y adecuada de la realidad publicada en las mismas respecto a las áreas de ingresos de la actividad de ingeniería y construcción y financiación ajena, todo ello en los graves términos que se expresan en el informe acompañado a la querella. Asimismo, como afirma el AAN, Sec. 3ª, de 15.09.2017 "socio y sociedad constituyen la misma unidad jurídica", la entidad auditoria en cuestión debe contar con un control de calidad interno, y un manual de cumplimiento normativo que comprenda políticas generales para todas las líneas de servicio.

QUINTO.- A la vista de todo lo anteriormente expuesto, siendo necesario concretar si la conducta examinada por las Consejeras y miembros de la Comisión de Auditoría de Abengoa S.A, **Mercedes GRACIA DÍEZ** y **Alicia VELARDE VALIENTE**; así como la del socio de Deloitte S.L., responsable de la auditoría, **Manuel ARRANZ ALONSO** reviste los caracteres de los delitos por los que se incoaron las presentes actuaciones, **delitos de falsedad contable del art. 290 CP y estafa de inversores del art. 282 bis CP**, es procedente la admisión a trámite de la ampliación de la querella contra las personas físicas, **Mercedes GRACIA DÍEZ, Alicia VELARDE VALIENTE** y **Manuel ARRANZ ALONSO**, por ser estos frente a la que, a tenor de lo anteriormente razonado, pudiera racionalmente desprenderse indicios de participación en las conductas penalmente relevante objeto de investigación.

SEXTO.- En cuanto a las personas jurídicas frente las que se dirige la ampliación de la querella presentada, se admite dicha ampliación **contra las mercantiles ABENGOA S.A** y **DELOITTE S.L.**

ADMINISTRACION DE JUSTICIA

como presuntos responsables de los hechos que en la misma se relacionan, en cuanto pudieran ser constitutivos de un ***delito de estafa de inversores del art. 282bis CP*** (art. 288 CP).

La Ley 37/2011, de 10 de octubre, de medidas de agilización procesal, que reformó la LECRIM, ha dotado a estos sujetos pasivos de la justicia penal de un estatuto jurídico procesal del que depende su actuación como investigados o encausados.

De conformidad con lo dispuesto en el art. 118 LECRIM toda persona a quien se atribuya un hecho punible podrá ejercitar el derecho de defensa, interviniendo en las actuaciones, desde que se le comunique su existencia, haya sido objeto de detención o de cualquier otra medida cautelar o se haya acordado su procesamiento.

Cuando de acuerdo con lo dispuesto en el precitado precepto, cuando haya de procederse a la imputación de una persona jurídica, se practicará con esta la comparecencia prevista en el art. 775 LECRIM, con las siguientes particularidades:

a) La citación se hará en el domicilio social de la persona jurídica, requiriendo a la entidad que proceda a la designación de un representante, así como Abogado y Procurador para ese procedimiento, con la advertencia de que, en caso de no hacerlo, se procederá a la designación de oficio de estos dos últimos. La falta de designación del representante no impedirá la sustanciación del procedimiento con el Abogado y Procurador designado.

b) La comparecencia se practicará con el representante especialmente designado de la persona jurídica imputada acompañada del Abogado de la misma. La inasistencia al acto de dicho representante determinará la práctica del mismo con el Abogado de la entidad.

c) El Juez informará al representante de la persona jurídica imputada o, en su caso, al Abogado, de los hechos que se imputan a esta. Esta información se facilitará por escrito o mediante entrega de una copia de la denuncia o querella presentada.

d) La designación del Procurador sustituirá a la indicación del domicilio a efectos de notificaciones, practicándose con el Procurador designado todos los actos de comunicación posteriores, incluidos aquellos a los que esta Ley asigna carácter personal. Si el Procurador ha sido nombrado de oficio se comunicará su identidad a la persona jurídica imputada.

SÉPTIMO. **En relación con las diligencias propuestas** por los querellantes en el apartado VII de su escrito, en consonancia con lo señalado, **procede acordar su práctica en el modo que se dirá en la parte dispositiva,** al considerar que las mismas son oportunas, útiles y adecuadas para la instrucción de la causa, en orden a los fines perseguidos en las presentes diligencias que son a los que hacen referencia, entre otros, los arts. 13, 299, 311 y 777 de la Ley de Enjuiciamiento Criminal, sin perjuicio de las siguientes matizaciones:

- Respecto de la **testifical n° 2.4,** deberá de estar condicionada al resultado de la prueba documental identificada como 1.4.
- Por lo que se refiere a la **documental n° 1.4,** ha de extenderse a cualesquiera modificaciones contractuales acordadas con posterioridad a su firma y, específicamente, se habrá de aportar la firmada el día 30-4-2014 (identificada en el apartado 30 (folio 32) del escrito de ampliación de querella).
- En cuanto a la ratificación del informe expedido por Juan José SILVA NAVARRETE que se propone resuélvase en resolución aparte.

Vistos los artículos citados y demás de general y pertinente aplicación,

PARTE DISPOSITIVA

ADMINISTRACION DE JUSTICIA

1.- Se tiene por **AMPLIADA LA QUERELLA** respecto de **Mercedes GRACIA DÍEZ, Alicia VELARDE VALIENTE** y **Manuel ARRANZ ALONSO** como presuntos responsables de los hechos que en la misma se relacionan, y que pudieran ser constitutivos de los ***delitos de falsedad contable del art. 290 CP, y estafa de inversores del art. 282 bis CP***.

Notifíquesele a los querellados mencionados, a los fines prevenidos en los arts. 118, 119, 775 y concordantes LECRIM, la existencia de este procedimiento penal, con los requerimientos legales.

2.- SE ADMITEN Y DECLARAN PERTINENTES las declaraciones solicitadas, en calidad de querellados de: Mercedes GRACIA DÍEZ, Alicia VELARDE VALIENTE y Manuel ARRANZ ALONSO, en los términos interesados, y respecto a su práctica, una vez se adecúe la agenda de señalamientos se acordará.

3.- Se tiene por **AMPLIADA LA QUERELLA contra las mercantiles ABENGOA S.A** y **DELOITTE S.L.** como presuntos responsables de los hechos que en la misma se relacionan, en cuanto pudieran ser constitutivos de un ***delito de estafa de inversores del art. 282bis CP*** (art. 288 CP).

A los efectos prevenidos en los arts. 118, 119, 775 y concordantes LECRIM, NOTIFÍQUESE a las mercantiles referidas en la presente resolución, con traslado de copia de las presentes actuaciones, REQUIRIÉNDOLES, asimismo, a fin de que, en el plazo de **cinco días**, procedan a la designación de un representante, así como abogado y procurador para este procedimiento. Dicha designación deberá verificarse mediante comparecencia de los correspondientes representantes legales de dichas mercantiles ante el Letrado de la Administración de Justicia de este Juzgado, o bien mediante escritura pública. En caso de no designar abogado y procurador les serán designados del turno de oficio. Y la falta de designación del representante de las personas jurídicas no impedirá la sustanciación del procedimiento con los correspondientes abogado y procurador, sean de oficio o libre designación.

4.- SE ADMITE Y DECLARA PERTINENTE las declaraciones solicitadas, en calidad de testigos, de:

1. **Doña Isabel SERANTES GÓMEZ**
2. **Doña Laura SEIJAS DEUS**
3. **Fernando LAFUENTE SESEÑA**
4. **Julián GARCÍA WOODS**

Respecto a su práctica, una vez se adecúe la agenda de señalamientos se acordará.

En cuanto a la testifical nº 2.4, estese a la espera del resultado de la prueba documental identificada como 1.4 y con su resultado se acordará.

Por lo que a la testifical nº 2.5 se refiere, una vez se conozca su identidad, a la vista de lo que resulte de la diligencia de investigación documental 1.5, se acordará sobre su práctica.

Respecto a la testifical nº 2.6, estese a la espera del resultado de la prueba documental 3.1, y verificado se acordará en su caso respecto a su declaración, que deberá serlo, en cualquier caso, en calidad de testigos.

5.- En cuanto a la ratificación del informe presentado por Juan José SILVA NAVARRETE resuélvase lo que proceda en resolución aparte.

6.- REQUIÉRASE a **ABENGOA S.A.** para que aporte para su unión a autos:

A. Contrato de Préstamo Sindicado en la modalidad *revolving* por importe de 1.400.-M€ suscrito el 30 de septiembre de 2014 con BANCO SANTANDER, HSBC, SOCIÉTÉ

ADMINISTRACION DE JUSTICIA

GÉNÉRALE, BANK OF AMÉRICA, BANKIA, CAIXABANK, CITIGROUP, CREDIT AGRICOLE, NATIXIS, BANCO POPULAR Y BANCO DE SABADELL según Hecho Relevante de 1 de octubre de 2014 (documento nº 5), cuyo ratio financiero (*covenant*) estipulado en el mismo fue incumplido de acuerdo con la Resolución sancionadora del ICAC que obra en las actuaciones.

B. Contratos de financiación suscritos por las filiales "INABENSA, S.A." y "ABENER ENERGÍA, S.A.", cuyos *covenants* estipulados fueron igualmente incumplidos de acuerdo con la Resolución sancionadora del ICAC que obra en las actuaciones.
C. Test de deterioro de los proyectos "Atacama II" y "Planta de Generación A3T" correspondientes al ejercicio 2014 y test de deterioro del proyecto "Planta de
D. Generación ACC4T" correspondiente al ejercicio 2015.
E. El contrato en la modalidad "llave en mano" suscrito el 5 de septiembre de 2013 para la construcción de la central de cogeneración A3T en México entre la filial de ABENGOA concesionaria "ABENER 3T" y las constructoras en UTE también filiales de ABENGOA "ABENER ENERGÍA, S.A." e "INSTALACIONES INABENSA, S.A." junto con la Adenda modificativa de su cláusula 8.1. "Precio del contrato" de 30 de abril de 2014, así como el acuerdo de concesión a ABENGOA de la referida central de cogeneración A3T para la práctica de la testifical de la persona firmante en su condición de representante de la empresa u organismo cedente de la concesión.
F. Documento firmado con la orden de cancelación a 31 de diciembre de 2014 de 500.-M€, para su nueva disposición el 2 de enero de 2015, del préstamo sindicado en la modalidad *revolving* por importe de 1.400M€ suscrito el 30 de septiembre de 2014, con identidad de su firmante para la práctica de su declaración testifical.

7.- REQUIERASE a la firma **DELOITTE S.L.** al objeto de que aporte los siguientes papeles de trabajo analizados por el ICAC en su Resolución de 20 de febrero de 2018, entre otros:

7.1. EMS 22904.16.10. 1 y 2. Contrato modalidad llave en mano. Pág. 98.
7.2. EMS 22904.16.10.8. "Memo de corrección margen A3T". Pág.98.
7.3. EMS 133002."Análisis de riesgo y respuestas del auditor". Pág. 98.
7.4. EMS 28822.4. Documentación sobre el informe de precios de transferencia elaborado por KPMG. Pág. 102.
7.5. EMS 26822.7. Memo revisión fiscal precios de transferencia ABENGOA 2014. Pág.104.
7.6. EMS 22904.16.2. ABENER ENERGÍA, S.A. Pág. 115, 120-121.
7.7. EMS 30502. "ICI reconocimiento de estimaciones de márgenes". Pág. 121
7.8. EMS 29601. Deficiencia significativa detectada en las pruebas de controles. Pág.135.
7.9. EMS 221001.1 a 3. "ICI Memo validación margen final de obra (MFO), Pág. 137.
7.10. EMS 24115.6. "Contrato de financiación sindicada (2014)". Pág. 152.
7.11. EMS 24104.10.6. "Contrato de préstamo sindicado de 2012". Pág. 152.
7.12. EMS 24215. Verificación de que ABENGOA GREENFIELD puede ser considerada como de Compañía de proyecto. Pág. 163
7.13. EMS 24114.1. Escritura pública del préstamo sindicado 2019. Pág.166.
7.14. EMS 24140.1. "Análisis del *convenant* corporativo tras la refinanciación del PS". Pág. 166.
7.15. EMS 12401. Análisis de las presentaciones de resultados públicos inversores Pág. 183.
7.16. EMS 12407. Análisis del *going concern* a preliminar" Pág. 184.
7.17. EMS 12102.2. "Memo de exposición de riesgos". Pág. 184.

ADMINISTRACION DE JUSTICIA

7.18. EMS 12406.2. "Análisis del *Covenant* corporativo". Pág. 185.
7.19. EMS 29530. "Reunión del 3 del 2 del 2015 plan estratégico ABENGOA 2015". Pág. 185.
7.20. EMS 29531. Análisis retrospectivo con respecto al aportado en el ejercicio anterior. Pág. 186.
7.21. EMS 29540. "Análisis sobre el presupuesto de Tesorería del ejercicio 2015". Pág.186.
7.22. EMS 24115.4. "Cuadro de amortización sindicado FY2014". Pág. 188.

8.- Requiérase a la entidad **KPMG ASESORES S.L.,** Paseo de la Castellana, 95, 28046 Madrid, al objeto de que aporte para su unión a autos:

A. Certificado comprensivo de la identidad de sus directivos y/o empleados, actuales o pasados, con su cargo, que hayan participado en la elaboración del borrador de informe "Proyecto Palmera" de fecha 24 de septiembre de 2015 (folio 723 y ss. Del Tomo 5 de la "1 Pieza Separada DP 10-2016") encargado por ABENGOA a solicitud de las entidades financieras (Banco Santander y HSBC) inicialmente interesadas en asegurar la ampliación de capital de ABENGOA anunciada en agosto de 2015 y que según KPMG "*no se llegó a emitir informe en versión final debido a que no nos fue confirmada por la dirección de la entidad la realidad y exactitud de la información facilitada por la misma para la realización del trabajo*" (folio 724), junto con el presupuesto aceptado y facturas emitidas acompañadas de las hojas de tiempo con el detalle de los profesionales que participaron en su elaboración.
B. Los informes internos, memorandos, correspondencia, correos electrónicos intercambiados y toda la documentación generada y/o facilitada por ABENGOA para la realización del referido borrador de informe, incluida aquella que justifique el motivo por el que no llegó a emitirse en versión final.

Póngase esta resolución en conocimiento del Ministerio Fiscal y demás partes personadas, previniéndoles que contra la misma cabe interponer **RECURSO DE REFORMA**, ante este Juzgado por término de TRES DÍAS. El recurso de apelación podrá interponerse subsidiariamente con el de reforma o por separado. En ningún caso será necesario interponer previamente el de reforma para presentar la apelación. El recurso de apelación se presentará dentro de los CINCO días siguientes a la notificación del auto recurrido o del resolutorio del recurso de reforma.

Así lo acuerda, manda y firma **ISMAEL MORENO CHAMARRO, MAGISTRADO-JUEZ** del Juzgado Central de Instrucción nº 2 de la Audiencia Nacional.- Doy fe.

**EL MAGISTADO-JUEZ** **EL LETRADO DE LA ADMINISTRACIÓN DE JUSTICIA**

**DILIGENCIA**: Seguidamente se cumple lo acordado; doy fe

[Margin:] [Emblem of the Justice Administration]

CENTRAL COURT No. 002
MADRID
NATIONAL COURT C / GARCIA GUTIERREZ S/N 3 FL
Tel.: 917096527 / 28 / 33 / 32
Fax: 917096541
NIG: 28079 27 2 2016 0000410
GUB11

**PREVIOUS PROCEEDINGS - SUMMARY PROCEDURE 0000010 / 2016**

**RULING**

In Madrid, February 3, 2020.

**FACTUAL BACKGROUND**

**FIRST**: This case was initiated by the filing of a complaint dated March 22, 2016, by MARIA JOSE BUENO RAMIREZ, Prosecutor of the Courts and on behalf of **IÑIGO MAC-CROHON PADILLA, MARIA ISABEL TUÑON LARA, JUAN FRANCISCO CALLEJON ARROYO, MARIA CRISTINA LOPEZ LOPEZ, DANIEL SUREDA REAI, YOLANDA ALONSO GONZALEZ, JOSE LUIS VILLA SABATELL, IGNACIO SILGADO MAESTRE, CARMEN GOYTRE CASTRO, ANTONIO CATALA RIPOLI, JUAN RAMON RODRIGUEZ ALCALA, JUAN ALFONSO CALVO MAGALON, JULIO IGNACIO BURDIEL GARCIA, ISABEL RODRIGUEZ RUBIO, MANUEL ARTILLO REMBADO, RUBEN TABOAS ARAUJO, RICARDO FERNANDEZ TAPIAS, FRANCISCO GIMENEZ LORENTE and the companies EUREXTRA S.L. and PATATUS SLU**, (members of the "ABENGOA S.A. PLATFORM"), for the alleged corporate crime as defined in article 290 of the Penal Code, and the crime of misrepresentation in capital investment or misrepresentation in investment in stock markets, as defined in art 282 bis of the Penal Code, against **Felipe BENJUMEA LLORENTE AND MANUEL SANCHEZ ORTEGA**, which was admitted for processing by Order dated February 2, 2017.

Specifically, these Preliminary Proceedings were initiated to determine whether the optimal figures reflected on ABENGOA's financial statements and the idyllic financial situation disclosed by its managers, prior to its financial collapse (which in November 2015 led them to submit a pre-bankruptcy application), were or were not contrary to the financial and economic reality of the company.

**SECOND**: Subsequently, the proceedings arising after the filed complaint was admitted have been carried out, as well as the additional procedures that were conceded as stated in the record.

**THIRD**: On December 26, 2019, Attorney Maria Jose Bueno Ramirez, on behalf of **JOSE LUIS VILLA SABATELL and 217 others**, all of them members of the "ABENGOA S.A. PLATFORM", filed a brief requesting the EXTENSION OF THE COMPLAINT against:

1. **ABENGOA S.A.** and the Directors and members of its Audit Committee, **Mercedes GRACIA DIEZ and Alicia VELARDE VALIENTE**;

2. **DELOITTE S.L.**, auditing company for ABENGOA'S accounts;

3. As well as its partner responsible for the audit, **Manuel ARRANZ ALONSO**.

Likewise, the aforementioned brief requests new documentary evidence, testimony and ratification of reports, as listed in section VII thereof, and which are held to be incorporated herein for the sake of procedural economy.

**FOURTH:** Having sent notice to the Prosecutor's Office for information thereof by procedural decision dated December 30, 2019, an opinion was issued on January 23, 2020, which states verbatim:

*"**THE PROSECUTOR**, responding to the notice served by the decision of December 30, 2019, entered in DP No. 10-16, regarding the request made by the legal representative of the "Abengoa Platform", by brief dated 12/23/19, to expand the complaint against the entity "ABENGOA S.A." and the directors and members of its audit committee: Mercedes Gracia Diez and Alicia Velarde Valiente; as well as against the entity "DELOITTE, S.L." and its partner responsible for the audit of the first entity, Manuel Arranz Alonso, states that he DOES NOT OPPOSE [said request], on the basis of the arguments set forth in the aforementioned complaint.*

*As a matter of fact, throughout the processing of this case, enough evidence has been gathered to establish at this stage of the trial, and without prejudice to the court ruling otherwise, a possible accounting misrepresentation of the accounts corresponding to, at least, the 2014 to 2016 yearly financial statements of Abengoa, S.A. and certain subsidiaries (ABENGOA SOLAR, S.A. and ABENGOA BIOENERGIA, S.A.), to the detriment of its partners, shareholders and / or third parties. To this end, and despite the difficulties and obstacles in gathering the documentation that seems to point to the aforementioned facts, there is evidentiary information in the expert report provided by the complainant, which uncovers the systematic concealment of substantial losses (portfolio losses) of assets, as well as the inclusion of work certifications not sufficiently accredited, that point out a clear misrepresentation of the actual economic-financial situation of the entity.*

*The suspicions that loomed in this regard, have apparently materialized to such an extent, both in specific accounting operations of concealment and emergence of non-existing assets of such depth, that they require the pertinent clarifications by way of documentary evidence. To that effect, it serves to read the resolution by the "Institute of Accounting and Auditing of Accounts" (ICAC) dated 02/20/2018, extensively analyzed in the letter of request of expansion of the complaint, together with the rest of the procedural steps and, particularly, the statements provided by the sole defendants to date, whose explanations about the underlying cause of the bankruptcy of the entity they were managing, are significantly questionable.*

*In accordance with the hypothesis presented with sound arguments by the complainant, there is evidence of the peremptory need to require from the entities involved, pertinent answers to the questions that are raised regarding the gaps found in the audit of "ABENGOA's" accounts for the 2014 financial year by "DELOITTE, S.L.".*

*The facts, in this stage of the proceedings, could include crimes of misrepresentation of the accounts that reflect the economic situation of the company to the detriment of itself, its partners or third parties; and the crime of investment fraud defined under articles 290 and 282 bis, respectively, of the Penal Code.*

*In fact, with respect to the type of crime provided for in article 290 of the Penal Code, a gross (in the sense of significant) misrepresentation of the accounts is required to such an extent that it alters, in commercial terms, the actual image of the entity to the point that it is suitable to cause the economic damage required in the classification.*

*The existence of misrepresentation is established by comparison with what should have been stated in the misrepresented documents, therefore, it is necessary to state what should have been the correct information reflected therein. To that effect, the expert evidence provided by the party and its exhaustive analysis are of special significance, in the absence of any other explanation and / or documentation that could fill in the gaps and banish any doubt in this regard.*

*As far as who is deemed the perpetrator of the aforementioned criminal offense, the status of administrator in fact or in law is an absolute requirement; however, in this sense, it is necessary to bring up the caselaw (vb. Supreme Court Judgments No. 94/2018, of February 23; No. 228/2016, of March 17 or No. 749/2017, of November 21), which, in summary, includes everyone who has control over the actions in the corresponding entity, that enables him or her to make a decisive intervention in the misrepresentation that is being penalized.*

*For this reason, neither the appointment to a position, nor the performance of the same are required to establish the responsibility of the holder of said position, with respect to all actions carried out within his competence; in the same way, as the mere fact of being part of the Board of Directors "does not determine responsibility for the criminal acts agreed in it or in those carried out by other directors, even though it constitutes an indication, of special significance that must be assessed" (STS No. 749/2017, of November 21). All this in accordance with the spirit that presides over Royal Legislative Decree 1/2010, of July 2, which approves the revised text of the Capital Company Act (article 236-4).*

*In this sense, the extension of the complaint to the individuals directly responsible for the audit of the entity, both external and internal, is not only justified, it is reasonable.*

*Regarding the type of crime provided for in article 282 bis of the Penal Code, it is necessary to specify its factual, objective and subjective requirements. Faced with excessively rigorous stances that would render the practical application of the precept ineffective, the Supreme Court has developed a more flexible interpretation of the required conditions and fundamentally of the subjective element of the type [of crime] so that it is not essential to prove that the misrepresentations were carried out with the unequivocal intent to mislead potential investors, regarding a specific transaction for the sale of corporate assets, whose value has been manipulated upwards; rather, it suffices to misrepresent the information that the company publishes and disseminates, in accordance with the stock market legislation, regarding current and future resources, activities and businesses, with the intent of attracting investors or obtaining financing. And, to determine the subjective element of the crime (to attract investors), it suffices to prove the offense; that is, having transmitted misrepresented accounting information manipulated upwards, to the body in charge of its control, endorsement and dissemination, such as the National Securities Market Commission, which is also in charge of protecting investors. All of this without prejudice to the specific presentation of results in the renewable energy market, as outlined in section 65 (page 65) of the brief of expansion of the complaint.*

*In this sense, it is necessary to bear in mind that this crime is included in Section 3 of Chapter XI of Title XIII of Book II of the Penal Code, regarding crimes against the market and consumers, so that the legal right can be identified as the right of those who operate in such markets, to their transparency and to receive truthful information about the companies operating therein.*

*For all these reasons and without prejudice to the analysis that is not required at this time regarding the possible overlapping regulations on the criminal types described, the truth is that the data collected thus far allows the consideration of both types of crime, which moreover, leads to another consequence related to the guarantee of the legal-procedural status of the commercial entities involved, in that the only possible criminal liability foreseen is liability for the crime referred to in article 282 bis of the Penal Code (article 288 of the Penal Code).*

*Therefore, in accordance with the provisions of article 31 bis and 288 of the Penal Code, it is necessary to grant the formal indictment of the companies "ABENGOA S.A." and "DELOITTE, S.L." in the terms of article 119, in relation to articles 118-5 and 775 of the Criminal Procedural Law.*

*In this way, not only is the safeguarding of their rights guaranteed, but they are also given the opportunity to demonstrate compliance with the requirements for exemption from criminal liability set forth in article 31 bis-2 and 4 of the Penal Code, or mitigation of the same, in the terms of article 31 quater of the Penal Code.*

*For all these reasons and based on both the foregoing and the exhaustive arguments prepared by the private prosecution, the Prosecutor understands that it is appropriate to admit the expansion of the complaint in the terms requested.*

***Regarding the procedures carried out**, in accordance with the aforementioned, [THE PROSECUTOR] DOES NOT OPPOSE them, as they are timely, useful and adequate for the investigation of the case, without prejudice to the following clarifications:*

*- Regarding the **testimonies** identified as **2.1**, **2.2 and 2.6**, since the proposed statement is based on their intervention as professionals with specific technical-accounting knowledge and in relation to specific reports prepared by them, they must be summoned as experts.*

*- Regarding **testimony 2.4**, we understand that it must be conditioned to the result of the documentary evidence identified as 1.4.*

*- Regarding **documentary evidence No. 1.4**, we consider that it should be extended to any amendment of contract agreed upon after its signing and, specifically, the one signed on 04/30/2014 (identified in section 30 (page 32) of the brief of expansion of the complaint).*

*- As for the **expert opinion** proposed, given the procedural stage that we are in, at this time the Prosecutor **does not consider it relevant** ..."*

**FIFTH**: On January 13, 2020, the attorney for the defendant Felipe BENJUMEA LLORENTE; and on January 16, 2020, the attorney for the defendant Antonio Manuel SANCHEZ ORTEGA, submitted two separate briefs opposing the expansion of the complaint based on the allegations included herein, for the sake of procedural economy.

## LEGAL GROUNDS

**FIRST**: Art. 312 of the Criminal Procedural Law establishes: "When a complaint is filed, the Investigating Judge, after admitting it, if appropriate, will order the measures proposed therein, except those that he/she considers contrary to the laws, or unnecessary or harmful for the purpose of the complaint, actions that shall be denied in a reasoned resolution ". Moreover, article 313 LECrim shall only authorize the dismissal of the complaint "when the facts on which it is based do not constitute a crime, or when it does not have jurisdiction to initiate the summary proceedings of the same."

When analyzing the facts reported in the expansion of the complaint, we must take into account the following premises regarding the so-called *ius ut procedatur* in criminal matters: criminal proceedings may only be initiated if the facts reported in the complaint present criminal characteristics. As stated in the ATS of May 26, 2009, *"the filing of a complaint does not necessarily or unavoidably lead to the initiation of criminal proceedings. Therefore, an initial legal assessment is required, art. 312 of the Criminal*

*Procedural Law establishing, in this sense, that the complaint must be admitted if appropriate, and stipulating art. 313, that it must be dismissed when the facts on which it is based do not constitute a crime. The initial assessment must be based on the terms of the complaint, so that if these, as they are formulated or affirmed, are not criminal, the complaint shall be rejected by reasoned resolution. Only if the alleged facts, in their concrete formulation, meet the requirements of some type of criminal offense, should the complaint be admitted without prejudice to the decisions that may rise from subsequent proceedings".*

This is also the criterion reiterated by the TC (STC 138/1997) when it states that a distinction must be made between those cases where the judicial resolution does not exclude *ab initio* the events denounced, the characteristic notes of a crime, and those in which it does exclude them. In the first case, there is an *ius ut procedatur* according to which the necessary investigations must proceed. Not so in those cases in which the judicial body reasonably understands that the actions or alleged facts, sufficiently described in the complaint, are not criminally unlawful.

**SECOND:** In this case, the request formulated by the legal representative of the "Abengoa Platform" for the expansion of the complaint is based mainly on:

1. **The report, attached as document No. 2 issued by Economist and Accounts Auditor, Juan Jose SILVA NAVARRETE**, currently the director of the "SILVA & ASOCIADOS" firm, issued on date XXXX, which reflects the systematic concealment of substantial losses (portfolio losses) of assets, as well as the inclusion of insufficiently accredited certifications, that have determined a clear misrepresentation of the actual economic-financial situation of the entity, Abengoa S.A.; particularly said report concludes that:

- *Those **portfolio losses accounted for in 2015 and 2016** should have been recorded (recognized), in amounts of material significance, **at least since 2014** and on the contrary, they were deliberately kept **hidden to give a misrepresentation** of the financial status of the company, all to the detriment of numerous investors who invested their savings, while trusting in the truthfulness of the financial information transmitted by ABENGOA.*

- *The consolidated and also the individual annual accounts of ABENGOA S.A. and subsidiaries (in particular, the parent companies of the Solar and Bioenergy segments of the Group, ABENGOA SOLAR, S.A. and ABENGOA BIOENERGIA, S.A.), **for financial years 2014 and 2015, do not reflect the reality of their financial situation**, as well as the result of their operations.*

- *In light of the foregoing, **the reason for the collapse of ABENGOA expressed by the defendants in their statement**, which consisted in the [company's] need for liquidity of € 650 million that could not be obtained through capital increase due to the failure of the banks that did not secure it, **is unfounded and unreasonable**.*

2. **Resolution dated February 20, 2018 by the INSTITUTE OF ACCOUNTING AND AUDITING OF ACCOUNTS (ICAC)**, issued in the disciplinary proceedings following a complaint made on October 27, 2016 by the "ABENGOA PLATFORM" to the company auditing the accounts of ABENGOA, DELOITTE S.L. and its partner Manuel ARRANZ ALONSO.

On the complainant's side, it is alleged that the serious audit deficiencies and material inaccuracies of ABENGOA's accounts, outlined by the disciplinary resolution issued by ICAC, undertaken with the collaboration of those responsible for DELOITTE's auditing and, of course, the company itself are evidenced based on the following:

**A. INDICATIONS OF MISREPRESENTATION DETECTED IN THE RECOGNITION OF REVENUE FROM THE ENGINEERING AND CONSTRUCTION ACTIVITY OF ABENGOA WITH THE APPROVAL AND AUTHORIZATION OF THE AUDITORS.**

**Firstly**, ICAC's Resolution highlights that DELOITTE and its audit partner, Mr. ARRANZ, did not obtain sufficient and adequate evidence in the verification of income from ABENGOA's engineering and construction activity (ICI) for an amount of **€ 4,514.49 million**, which represents **63.14% of the group's turnover**, despite the fact that (obviously, given the magnitude) they assessed the risk in this recognition of revenue as a **significant risk of fraud**.

In short, the auditors did not verify the accuracy and reliability of income recorded in the ABENGOA accounts for the 2014 financial year, from the engineering and construction activity, which represent 63.14% of its turnover, through by obtaining, as is mandatory, adequate and sufficient evidence to verify that they were free of inaccuracies due to fraud.

**Secondly**, ICAC indicates that the auditors did not obtain sufficient and adequate evidence of the reasonableness and reliability of the "margin" estimates ascribed by ABENGOA's Management to the projects, as noticed in the sample taken for analysis by the auditors, which represented approximately 30% of the turnover. In addition, the selection [of the sample] was not in accordance with the technical auditing standards, as they were based on data from September 2014, and not from the end of the financial year.

Ultimately, as ICAC indicates, the auditors:

- Did not accurately select the sample of ABENGOA projects for analysis and review, in accordance with mandatory auditing technical standards, as it was made up of data from September 30 and the 2014 year-end; and from a sample of projects which represents 30% of the group's turnover,

- Did not verify the accuracy and reliability of the margin estimates of the projects and pending costs determined by ABENGOA's Management, by obtaining adequate and sufficient evidence to verify the absence of fraud, despite acknowledging its potential significant risk of fraud.

**Thirdly**, ICAC's Resolution also highlights a **serious and obvious material inaccuracy in the company's financial statements**, which did not go unnoticed by the auditors, but which was surprisingly endorsed by them, that is, the **illicit increase by 14.7% of the profit margin of ABENGOA's A3T project** (a cogeneration plant), which meant:

- Income in 2014 for 528 million euros, which represents 26% of the total income recognized in 2014 for the construction of concessional assets, and, as a result,

- An unjustified operating profit in the 2014 annual statements of none other than € 218 million; this figure is more than four times higher than the materiality threshold set by the auditors themselves at € 50,000,000, which is likely to have significantly affected the image that the company transmitted to the market, to the point that the operating profit for the financial year in the amount of € 125,300,000, should have actually been losses in the amount of € 92,700,000.

The Resolution considers proven the lack of sufficient and adequate evidence in the recognition of income from the Engineering and Construction (ICI) activity amounting to 4,514,496 thousand euros, that is, 63.14% of the net amount of the group's turnover, as well as the incorrect recording of a profit of 218 million euros in the consolidated financial statements for 2014, which is higher than the materiality threshold set at 50 million euros by the auditors for the purposes of issuing the report.

In short, ICAC's Resolution emphasizes the existence of **irregularities that indisputably affect the image that the defendant ABENGOA portrayed to the market on its accounts for the 2014 financial year, with the endorsement of the co-defendant DELOITTE**, that can be summarized as follows:

1. **The absolute lack of supporting evidence obtained by the auditors of the income registered in the ABENGOA accounts for an amount of € 4,514,490,000 equivalent to 63.14% of its turnover**;

2. **The absolute lack of supporting evidence obtained by the auditors that substantiates the reasonableness of the profit margin ascribed by ABENGOA to its projects and costs registered thereto, by figures of significant material scope: a sample of projects for € 2,215,000,000 equivalent to another 30% of its turnover** (although selected in a biased manner, based on data from September and not from the end of the financial year).

3. **The serious manipulated increase of the profit margin of the A3T project, which represented an unjustifiable profit of € 218,000,000 registered in ABENGOA's consolidated accounts, with a significant impact on the end-of-year result portrayed to the market.**

**B. EVIDENCE OF MISREPRESENTATION DETECTED IN ABENGOA'S EXTERNAL FINANCING AREA WITH THE AUDITORS' APPROVAL AND CONSENT**

In the area of external financing, ICAC's disciplinary resolution indicates the existence of two other serious irregularities:

- Breach of the covenant of a syndicated loan contract, as a result, among other reasons, of the incorrect classification of ABENGOA's debt for an amount of € 1,200,000,000, which entailed immediate enforceability from lending entities for the amount of € 880,200,000, which would have immediately caused ABENGOA's financial collapse and unviability long before it was admitted, by hiding it behind false data;

- Gross manipulation of the debt capacity reflected at the end of the 2014 financial year: cancellation on December 31, 2014 of a € 500,000,000 syndicated loan and its new availability on January 2, 2015.

*Consequently, ICAC's Resolution establishes that the auditors "have not reflected in the audit documentation, sufficient and adequate evidence that would allow them to justify their conclusion or the reason for classifying the debt as without recourse in the process analyzed herein (corresponding to the Abengoa Greenfield bonds and category B of the syndicated loan); their conclusion that this debt met the three criteria required in the loan contract was not supported, therefore the exclusion was justified for the purposes of compliance with the covenant. In this sense, the audits that should have been carried out regarding the fulfillment of the requirements specified in the syndicated loan contract did not reflect nor justify exclusion of the calculation as net financial debt, for the purposes of compliance with the covenant. The performance of the auditors is reprehensible given that they themselves are the ones who [should] qualify the audit of these matters as significant risks".*

Ultimately, the complainant affirms, that there are solid indications to prove how an enormous amount of € 1,200,000,000, which included the issuance of green bonds and category B of the syndicated loan, were unjustifiably excluded from the calculation of net financial debt in order to **hide the breach of contract *[covenant]* seriously affecting ABENGOA's own viability as an operating company**.

According to the complainant, time and the investigative work of this Court have confirmed the well-founded suspicions that originated the complaint, and, together with the rest of the evidence revealed in the brief of expansion of the complaint, ICAC's Resolution also reports the existence of serious irregularities that indisputably affect the image that ABENGOA portrayed to the market, such as:

- Concealing from the market the breach of the financial ratio (*covenant*) stipulated in the syndicated loan contract of September 30, 2014, resulting in the lending entities' right to demand the immediate repayment of € 880,200,000, with the consequent effect on the liquidity and solvency of the company and the clear risk of **continuing its operations as a company**;

**- The incorrect classification of debt reported to the market in the amount of € 1,200,000,000** (€ 500,000,000 from the issuance of green bonds carried out on September 30, 2014 by ABENGOA GREENFIELD, and € 700,000,000 from category B of the syndicated loan of same date), **in order to exclude it from the calculation of the *covenant* and at the same time report a leverage ratio much lower than the real one, as FITCH warned in its note of November 14, 2014 (noting that the ratio was twice as high as that reported because it excluded from the calculation its so-called "non-recourse debt in process")**;

**The concealment from the market of the breach of the financial ratio (*covenant*) also stipulated in the contracts for the financing of projects of subsidiaries ABENER ENERGIA, S.A. and INABENSA, S.A., which would give the lenders the right to demand immediate reimbursement of € 344,4000,000 and € 304,000,000, respectively, with the corresponding effect on the viability of the projects;**

**- The fraudulent maneuver of cancellation on December 31, 2014 of the balance of € 500,000,000 of the aforementioned syndicated loan and its new availability on the first business day of 2015 (January 2) to portray to the market an image of strength and unrealistic debt capacity in its 2014 accounts.**

In view of the foregoing, the complainant alleges fraud in the concealment of the financial situation of a company, and there is no lack of reasons to demonstrate the viability of the expansion of the complaint before us against ABENGOA, as well as against:

- DELOITTE S.L. and its partner Manuel ARRANZ ALONSO, who bear maximum responsibility for the external audit of ABENGOA's accounts,

- Mercedes GRACIA DIEZ and Alicia VELARDE VALIENTE, responsible for many years for the "financial information process and the Company's internal control systems", for "accounts auditing" and for the supervision of the "preparation and integrity of the financial information related to the Company", in accordance with ABENGOA's Internal Audit Regulations, for their conspiracy and collaboration with the current defendants (the top-level managers of the company, Messrs. BENJUMEA and SANCHEZ ORTEGA) to undertake the serious falsification and alleged misrepresentation of the economic and financial reality, which was concealed from thousands of investors who decided to invest their savings in the company, leading them to believe in an image diametrically different from the real one, to the extent that where there were expectations of benefits and dividends, indeed there were losses of such magnitude that it became unsustainable, the company being forced to acknowledge insolvency, a situation it could only emerge from with deductions of up to 97% and ten (10) year waiting periods.

3. In addition to the report (referred to in number 1) and ICAC's resolution (referred to in number 2), the complainant makes reference to the reports by the firms "ALTRAN" and "MAC GROUP" provided by the STATE ATTORNEY in arbitration procedure SCC2013 / 094, filed at the "STOCKHOLM CHAMBER OF COMMERCE INSTITUTE OF ARBITRATION" by ABENGOA's subsidiary "CSP EQUITY INVESTMENT S.A.-R.L" against the KINGDOM OF SPAIN for € 840,000,000, for loss of value in its six solar plants located in Spain (*Helioenergy 1 and 2, Solaben 2 and 3 and Solacor 1 and 2*) as a result of the Government's energy reform in late 2013. So, specifically:

**- The report issued by "ALTRAN" and "MAC GROUP" on October 15, 2014**, submitted along with the response to the complaint of the STATE ATTORNEY, shows the existence of **"CLEAR CONTRADICTIONS BETWEEN THE INFORMATION PUBLISHED BY ABENGOA ITSELF AND THAT PROVIDED IN ITS REPORT"**

- The **report issued by "ALTRAN" and "MAC GROUP" on June 7, 2017** also highlights a **clear divergence between the damages claimed and the absence of mandatory leverage in the balance sheet of the company.**

In short, if ABENGOA became insolvent in a very short period of time, if the banks did not guarantee the capital increase in the amount of € 650,000,000, it was because ABENGOA's accounts reflected a very different reality from its true economic, financial and asset situation during the time it was managed by Messrs. BENJUMEA and SANCHEZ ORTEGA, when its AUDIT COMMITTEE was controlled by the two Board Members currently being sued, Ms. GRACIA DIEZ and VELARDE VALIENTE; and it was audited without qualification by **DELOITTE** and by Mr. ARRANZ ALONSO.

**THIRD**. As a matter of fact, and in accordance with the Prosecutor's Office, throughout the processing of this case, enough evidence has been gathered to establish at this stage of the trial, and without prejudice to the court ruling otherwise, a possible accounting alteration of the accounts corresponding, at least, to the 2014 to 2016 yearly financial statements of Abengoa, S.A. and certain subsidiaries (ABENGOA SOLAR, S.A. and ABENGOA BIOENERGIA, S.A.), to the detriment of its partners, shareholders and / or third parties.

The state of the case, and particularly the report provided by the complainant, shows that there is evidence that can be inferred from the systematic concealment of substantial losses of its assets, as well as the inclusion of insufficiently accredited certifications that indicate a visible misrepresentation of the reality of the entity's economic and financial situation.

ICAC's resolution of 02/20/2018, taken into consideration along with the rest of the procedural measures and, specifically, the statements made by the only individuals investigated to date, whose explanations of the leading cause for the bankruptcy of the entity they managed are questionable, show that there have been specific accounting operations of concealment and the emergence of non-existent assets of such depth that they require the pertinent clarifications, predominantly by way of documentary evidence. The matter herein supports the peremptory need to demand from the entities involved, the appropriate answers to the questions that arise regarding the gaps found in the audit of ABENGOA's accounts by DELOITTE, S.L., during financial year 2014.

These facts, at this stage of the trial, could include crimes of misrepresentation of the accounts that reflect the economic situation of the company to the detriment of the company itself, its partners or third parties; and the crime of fraud against investors as defined in articles 290 and 282 bis, respectively, of the Penal Code.

In any event, the only crime that the defendant entities can be charged with is that of investment fraud as defined in art. 282 bis PC, in accordance with the provisions of art. 288 PC. Not so with the crime of accounting misrepresentation as defined in art. 290 PC; therefore, in accordance with the provisions of art. 31 bis PC, legal entities shall only be criminally liable "for the crimes provided for in this Code", which do not include the crime of accounting misrepresentation provided for in art. 290 PC.

Firstly, regarding the **type of crime provided for in art. 290 PC**, it requires a gross (in the sense of significant) misrepresentation of the accounts to such an extent that it alters, in commercial terms, the actual image of the entity to the point that it is suitable to cause the financial damage required in the classification.

The existence of an alteration is established by comparison with what should have been stated in the misrepresented documents, so it is necessary to state what should have been the correct information reflected therein. To that effect, the report provided by the party and its exhaustive analysis are of special significance, in the absence of other explanations and / or documentation that can fill the apparent gaps that would banish any doubts in this regard.

The capacity of perpetrator is defined by "the control over the legal and criminal vulnerability of the legal right", which requires considering that, in this type of special crime, such capacity is established by "the control that the perpetrator has over the specific entity in which the legal right is in need of protection; and which the criminal law, through similar classifications, protects". We must take into account that hiding or deleting data is a way "of failing to tell the truth in the reporting of the facts", and on the other, "that the administrator has a legal obligation to carry out his duty with the diligence of an ordinary businessman and as his loyal representative", which implicitly, and in general terms, obliges him "to be truthful with the information he provides regarding the company".

In this sense, as stated by the Public Prosecutor's Office, the extension of the complaint to the individuals directly responsible for both external and internal audits of the company, is not only justified, it is reasonable.

Secondly, with regard to the **crime provided for and punished in art. 282 bis PC**, said type of crime, punishes "those who, as de facto or de jure administrators of a company issuing securities traded in the stock markets, misrepresent the economic-financial information contained in the prospectuses issued for any financial instrument, or the information that the company must publish and disseminate in accordance with the securities market legislation regarding its present and future resources, activities and businesses, with the intent to attract investors or depositors, to issue any type of financial asset, or obtain financing by any means". As stated in the STS of 07/22/2019, the typica behavior, in this type of crime, is the misrepresentation of economic-financial information. Therefore, the person who publishes or disseminates it or refers it to others for publication or dissemination is not penalized, rather the person who misrepresents it is. Elements of this type [of crime] include: that the information refers to the resources, activities and present and future businesses of the company; that the information refers to a company that issues securities traded in the stock markets; that the information is contained in the prospectuses of any financial instrument, or in the information that the company publishes and disseminates in accordance with the securities market legislation. Unlike what happens with article 290 PC, the misrepresentation of the information does not need to be ideal to cause harm to the investor or financer. However, it must be understood that, as it generally occurs with basic crimes of document forgery, crude forgery, incapable of altering judicial proceedings due to its peculiar characteristics, is excluded. Therefore, the misrepresented information must show in the very least, the ability to capture the investment or credit. And in the subjective elements, fraud is necessary, which must include the misrepresentation of the information, and a conclusive element summed up as the purpose to obtain a capital contribution.

Prima facie, the facts reported in the complaint, supported by the accompanying report, demonstrate the existence of serious infractions in the audit of ABENGOA's accounts for the 2014 financial year, as a result of failure to obtain sufficient and accurate evidence of the financial situation published therein, with respect to the revenue from the engineering and construction activities and external financing, all of a highly serious nature, as we will see in detail. This report highlights the existence of losses accounted for in 2015 and

2016 that should have been recorded, in significant amounts, at least since 2014, and would have been deliberately hidden to give a misrepresented appearance of the company's equity and financial situation; a situation that would result in obvious damage to those who invested, trusting in the truthfulness of the financial information provided by ABENGOA. Neither did the annual accounts, both consolidated and individual, of ABENGOA S.A. and subsidiaries (in particular, ABENGOA SOLAR, S.A. and ABENGOA BIOENERGIA, S.A.), corresponding to financial years 2014 and 2015, reflect the reality of its financial situation, nor the result of its operations. The report, after an analysis of the financial statements of the parent companies in the SOLAR and BIOENERGY industry, maintains that ABENGOA S.A. prior to 2015, should have recognized that these companies had no value, recording the aforementioned expenses as "loss" of value and resulting losses that until then, had been hidden from the market. The recurring losses of said parent companies since at least 2012, would amount to a total of 1,246,000, and the equity loans that the parent company (ABENGOA S.A.) granted since 2012 to said parent companies, which in 2015 totaled € 951,000,000 (ABENGOA BIOENERGIA S.A., 695,000,000 euros, and ABENGOA SOLAR S.A., 256,000,000 euros), to avoid legal dissolution and having to liquidate them. Likewise, the losses of ABENGOA SOLAR, S.A. and ABENGOA BIOENERGIA, S.A., appraised at zero euros in 2015, would imply that the subsidiaries of those parent companies that carry out the projects (which in 2015 recorded a balance of an enormous 2,806,000,000 euros) also had no value and, therefore, should have been liquidated in their entirety; and that the credits granted by the parent companies to their own subsidiaries (which in 2015 amounted to 2,501,800,000 euros) could not be repaid in their entirety, so they should have been entered as losses in the corresponding entry. However, ABENGOA decided to hide these decisive losses from the market, maintaining its balance sheet in an overvalued manner in order to influence the decision-making of its potential investors.

**FOURTH**. The criminal liability of legal entities was introduced into the Penal Code by LO 5/2010 to encourage corporations to implement mechanisms that prevent criminal acts for their benefit, both by their representatives, directors and managers, and by the rest of the hierarchy under them. The reform of the PC by LO 1/2015 clears any doubt that the adoption of truly effective prevention measures as established by law - through *corporate compliance* programs, that demonstrate the commitment of the business to a culture of compliance -, allows the corporation to be exempted from criminal liability if, despite the implementation of an effective preventive model, any individual involved with the entity referred to in letters a) and b) of article 31 bis 1 PC, carries out a criminal act by fraudulently evading prevention mechanisms.

The PC has established a two-way system for the prosecution of criminal responsibility of the legal entity. The first method of prosecution, provided for in letter a) of article 31 bis 1, establishes that the corporate entity shall be liable for those crimes committed by those who have powers of management, administration or representation, "in the name or on behalf of the legal entity, and for its direct or indirect benefit". The second method of prosecution, provided for in letter b) of the aforementioned provision, establishes the criminal liability of the corporate entity for the crimes committed, "in the exercise of business activities on behalf and for the direct or indirect benefit of the same, by those who, under the authority of the individuals mentioned in the previous paragraph, have been able to carry out such acts, the latter having seriously infringed their duties of supervision, surveillance and control of their activity, given the specific circumstances of the case."

According to the jurisprudence of the Supreme Court on the criminal liability of legal entities (SSTS 514/2015, of September 2; 154/2016, of February 29; 221/2016, of March 16; 516/2016, of June 13; 742/2016, of October 6; 827/2016, of November 3; 31/2017, of January 26; 121/2017, of February 23; and 583/2017, of July 19), to consider said law, firstly, the "two first requirements provided for in article 31 bis PC" must be verified: that an individual carried out any of the crimes included in the catalog of offenses

likely to result in the criminal liability of the legal entity, and that the aforementioned individual, the perpetrator of the crime, is a member of the corporate entity. Secondly, it is necessary to determine "whether the crime committed by the individual within the company was made possible, or facilitated, by the absence of a culture of respect for the Law, as a guideline for the actions of the organization and independent of that, of each of the individuals that comprise it, which would be evidenced by some existing method of surveillance and control of the behavior of its directors and hierarchical subordinates, aimed at avoiding the crimes listed in Book II of the Penal Code, as possible indicators of such responsibility by the legal entity.

Therefore, the criminal liability of the legal entity pivots on the "role" played by existing adequate surveillance and control mechanisms within the legal entity, suitable to hinder, or at least prevent, the committing of crimes by the individuals linked to the corporation. According to majority pronouncement STS 154/2016, the absence of effective control measures to avoid the committing of crimes is precisely at "the core of the responsibility of the legal entity", and this goes "beyond organization and management models in place" adequate to prevent or significantly reduce the risk of crimes being committed (the so-called corporate compliance or compliance models), which under certain legally established preconditions could exempt the corporate entity from criminal liability, or the mitigation of the sentence when said precondition is only partially justified.

In this case, companies ABENGOA S.A. and DELOITTE S.L., in accordance with the foregoing, are not mere instruments of the crime, as they are actual entities endowed with rights and obligations, and therefore must be deemed as entities under investigation for legal procedural purposes, with the rights and guarantees inherent thereto, for their alleged participation in the actions described in this resolution, as if they would constitute a crime as defined in art. 282 bis PC.

As for the company ABENGOA S.A., the events described in the expansion of the complaint were allegedly perpetrated by the Directors and members of their audit committee, Mercedes Gracia Diez and Alicia Velarde Valiente, while carrying out business activities and on behalf of the company, and to the direct or indirect benefit of the same.

With regard to the responsibility borne by DELOITTE S.L., Law 22/2015 of July 20, on Accounts Auditing, alludes in its Introduction that *"this activity, due to its contribution to the transparency and reliability of the economic and financial information of the audited companies and entities, constitutes an element inherent to the market economy system defined in article 38 of the Constitution. Thus, it is defined as an activity that, through the use of certain reviewing techniques, aims to issue a report on the reliability of the audited financial economic information, without limitation to the mere verification that the balances listed in their accounting entries correspond with those presented in the accounts that are audited, since the applied review and verification techniques allow, with a high degree of certainty, the provision of a technical and independent opinion on accounting as a whole and, furthermore, on other circumstances that affect the life of the company, but were not included in said process ".*

As stated in STS 94/2018, *"it is not right to reduce the relevance of the auditors' work to merely controlling the accuracy of company accounts. It is true that they are not the ones who prepare or formulate them; it is true that they are not responsible for guaranteeing their accuracy. However, it is also true that their function serves as an element of reassurance for third parties outside of the company, with respect to whether the accounts have been prepared and presented in accordance with applicable norms, insofar as their activity consists of "verifying and ruling on whether these accounts reflect the true state of the assets, the financial situation and the results of the audited entity, in accordance with the applicable regulatory framework on financial information", as stated verbatim in Article 1 of Law 19/1988 regarding the audit of accounts, in effect at the time of the events.*" Law 22/2015, currently in effect, provides in its art. 1 that

*"Audit of accounts shall be understood as the review and verification of annual accounts, as well as other financial statements or accounting documents, prepared in accordance with the applicable regulatory framework on financial information, provided that said activity is intended to issue a report on the reliability of such documents that may have effects against third parties."* Moreover, in this case, a sanction was issued by the Institute of Accounting and Accounts Auditing, the highest body in the matter of accounting standardization and accounting planning, as well as control of the accounts auditing activity, in its Resolution of February 20, 2018, where Deloitte S.L. and its partner, also the defendant, Manuel Arranz Alonso, were sanctioned for committing two serious violations in their auditing work on the accounts of ABENGOA, for financial year 2014, for failure to obtain sufficient and adequate evidence of the facts published in the same, with respect to the revenue from the engineering and construction activities and external financing, everything as sternly stated in the report annexed to the complaint. Likewise, as stated by AAN, Sec. 3, of 09/15/2017 "partner and corporation are the same legal unit", the auditing entity in question must have an internal quality control, and a regulatory compliance manual that includes general policies for all areas of service.

**FIFTH**: In view of all the above, it is still necessary to determine whether the actions by the Directors and members of the Audit Committee of Abengoa S.A, **Mercedes GRACIA DIEZ and Alicia VELARDE VALIENTE**, as well as that of the partner of Deloitte S.L., in charge of the audit, **Manuel ARRANZ ALONSO**, meet the criteria of the crimes that led to these charges, **crimes of accounting misrepresentation under art. 290 PC and investment fraud under art. 282 bis PC**; the extension of the complaint against individuals, **Mercedes GRACIA DIEZ, Alicia VELARDE VALIENTE and Manuel ARRANZ ALONSO**, is admissible, as these actions, according to the previous reasoning, could rationally evidence participation in the relevant criminal conduct under investigation.

**SIXTH**: Regarding the legal entities against which the expansion of the complaint is filed, said expansion is granted **against companies ABENGOA S.A.** and **DELOITTE S.L.** as alleged perpetrators of the actions related therein, insofar as these could constitute **a crime of investment fraud under art. 282 bis PC** (art. 288 PC).

Law 37/2011 of October 10, on measures to expedite process, as amended by LECRIM, has granted the defendants in a criminal case, a procedural legal status that determines their participation as investigated or prosecuted.

In accordance with art. 118 LECRIM, any person considered to be a suspect in a criminal offense has the right to a defense, and may intervene in the proceedings, as soon as he/she is informed thereof, has been detained or subject to any other precautionary measure, or has been ordered to be prosecuted.

In accordance with the provisions above, when a legal entity is charged, the appearance clause provided for in art. 775 LECRIM, shall apply on the following terms:

a) The summons shall be made at the registered office of the legal entity, requiring the entity to appoint a representative, as well as a Lawyer and Attorney for that process, with the indication that, should it fail to do so, the latter two shall be appointed by the court. Failure to appoint a representative shall not prevent the procedure from being carried out with the designated Lawyer and Attorney.

b) The representative specially designated by the legal entity being prosecuted shall appear, accompanied by the lawyer of the same. If said representative fails to appear, the lawyer of the entity shall act as such.

c) The Judge shall inform the representative about the legal entity being prosecuted or, where appropriate, the Lawyer, of the allegations. This information shall be provided in writing or by delivering a copy of the accusation or complaint filed.

d) The appointment of the Attorney shall replace the indication of the address for the purposes of notifications, as the Attorney shall be contacted for all subsequent communication, including those deemed personal under this Law. The identity of the court-appointed Attorney, when applicable, shall be communicated to the entity being prosecuted.

**SEVENTH: Regarding the measures proposed** by the complainants in section VII of their brief, in accordance with the aforementioned, **it is appropriate to proceed as it shall be stated in the operative part**, considering that said measures are timely, useful and adequate for the preliminary investigation of the cause, for the purposes indicated in these proceedings, referred to in arts. 13, 299, 311 and 777 of the Criminal Procedural Law, without prejudice to the following qualifications:

- Regarding **testimony No. 2.4**, it must be conditioned to the result of the documentary evidence identified as 1.4.

- With regard to **documentary evidence No. 1.4**, it should be extended to any contractual modification agreed upon after its signing and, specifically, the one signed on 04/30/2014 (identified in section 30 (page 32) of the brief of expansion of the complaint).

- Regarding the proposed ratification of the report issued by Juan Jose SILVA NAVARRETE, it shall be resolved in a separate resolution.

Whereas the foregoing articles and others of general and pertinent application,

**ORDER OF THE COURT**

1. The **COMPLAINT** is considered to be **EXTENDED** to include **Mercedes GRACIA DIEZ, Alicia VELARDE VALIENTE** and **Manuel ARRANZ ALONSO** as alleged perpetrators of the events that are related therein, and that may constitute crimes of **accounting misrepresentation under art. 290 PC, and investment fraud under art. 282 bis PC**.

Notify the defendants, for the purposes specified in arts. 118, 119, 775 and its LECRIM related articles, of the existence of this criminal procedure, with the inherent legal requirements.

2. The required statements of defendants Mercedes GRACIA DIEZ, Alicia VELARDE VALIENTE and Manuel ARRANZ ALONSO, are ADMITTED AND DECLARED RELEVANT, in the necessary terms; in practice, the manner in which they will be carried out shall be determined after the agenda is established.

3. **THE COMPLAINT is hereby EXPANDED against companies ABENGOA S.A** and **DELOITTE S.L.** as alleged perpetrators of the actions related therein, insofar as they could constitute a crime of **investment fraud under art. 282 bis PC** (art. 288 PC).

For the purposes provided for in arts. 118, 119, 775 and its LECRIM related articles, NOTIFY the companies referred to in this resolution, with a copy of these proceedings, REQUIRING THEM, also, to appoint a representative, as well as a lawyer and attorney for this process **within five days**. Said appointment must be verified by appearance of the corresponding legal representatives of said companies before the Court Clerk, or by public deed. If they do not appoint a lawyer and attorney, the Court shall

appoint them. Failure by the legal entities to appoint a representative shall not prevent the action from proceeding with the corresponding lawyer and attorney, whether they are appointed by the parties or by the Court.

4. The statements of these witnesses are hereby ALLOWED AND DECLARED PERTINENT:

1. **Mrs. Isabel SERANTES GOMEZ**

2. **Mrs. Laura SEIJAS DEUS**

3. **Fernando LAFUENTE SESEÑA**

4. **Julian GARCIA WOODS**

In practice, the manner in which they will be carried out shall be determined after the agenda is established.

Regarding testimony No. 2.4, wait for the result of documentary evidence 1.4 and a decision shall be made based on the results.

Regarding testimony No. 2.5, once his/her identity has been determined as a result of documentary investigation 1.5, a decision shall be made based on the results.

Regarding testimony No. 2.6, wait for the result of documentary evidence 3.1, and a decision shall be made regarding this statement, that in any case, shall be considered as witness statement.

5: Regarding the ratification of the report submitted by Juan Jose SILVA NAVARRETE, resolve as appropriate in a separate resolution.

6: REQUIRE **ABENGOA S.A.** to provide the following for inclusion in the records:

A. Revolving Syndicated Loan Agreement for an amount of € 1,400 million signed on September 30, 2014 with BANCO SANTANDER, HSBC, SOCIETE GENERALE, BANK OF AMERICA, BANKIA, CAIXABANK, CITIGROUP, CREDIT AGRICOLE, NATIXIS, BANCO POPULAR AND BANCO DE SABADELL, according to Relevant Fact dated October 1, 2014 (document No. 5), for which the financial ratio (*covenant*) stipulated was breached, in accordance with ICAC's disciplinary resolution on record for the proceedings.

B. Financing contracts signed by the subsidiaries "INABENSA, S.A." and "ABENER ENERGIA, S.A.", whose stipulated *covenants* were also breached, in accordance with ICAC's disciplinary resolution on record for the proceedings.

C. Impairment test of the "Atacama II" and "A3T Generation Plant" projects, corresponding to the 2014 financial year and impairment test of the

D. "ACC4T Generation Plant" corresponding to the 2015 financial year.

E. The "turnkey" contract signed on September 5, 2013 for the construction of the A3T cogeneration plant in Mexico between ABENGOA's subsidiary distributor "ABENER 3T" and the temporary joint venture construction companies, also subsidiaries of ABENGOA, "ABENER ENERGIA, S.A." and "INSTALACIONES INABENSA, S.A." together with the addendum amending its clause 8.1. "Contract price" of April 30, 2014, as well as the agreement of concession of the aforementioned A3T cogeneration plant to ABENGOA, for the purpose of taking the testimony of the signatory in his/her capacity as representative of the company or transferor of the concession.

F. Document signed December 31, 2014 with the cancellation order for € 500 million, made available again on January 2, 2015, of the syndicated revolving credit in the amount of € 1,400 million, subscribed on September 30, 2014, with the identity of its signatory, for the purpose of testimony.

7. REQUEST from **DELOITTE S.L.** the following working papers analyzed by ICAC in its Resolution of February 20, 2018, among others:

7.1. EMS 22904.16.10. 1 and 2. Turnkey contract. Pg. 98.

7.2. EMS 22904.16.10.8. “A3T margin correction memo”. Pg. 98.

7.3. EMS 133002. “Risk analysis and auditor responses”. Pg. 98.

7.4. EMS 28822.4. Documentation on the transfer pricing report, prepared by KPMG. Pg. 102.

7.5. EMS 26822.7. Memo on transfer prices tax review ABENGOA 2014. Pg. 104.

7.6. EMS 22904.16.2. ABENER ENERGIA, S.A. Pg. 115, 120-121.

7.7. EMS 30502. “ICI declaration of margin estimates”. Pg. 121

7.8. EMS 29601. Significant deficiency detected in control evidence. Pg. 135.

7.9. EMS 221001.1 to 3. “ICI Memo: validation of the final margin of work (FMW)”, Pg. 137.

7.10. EMS 24115.6. “Syndicated Financing Agreement (2014)”. Pg. 152.

7.11. EMS 24104.10.6. “2012 Syndicated Loan Agreement”. Pg. 152.

7.12. EMS 24215. Verification that ABENGOA GREENFIELD can be considered a Project Company. Pg. 163

7.13. EMS 24114.1. Public deed of the syndicated loan 2019. Pg. 166.

7.14. EMS 24140.1. “Analysis of the corporate *convenant* after refinancing the SL". Pg. 166.

7.15. EMS 12401. Analysis of the public information presented to investors Pg. 183.

7.16. EMS 12407. “Analysis of the preliminary *going concern*” Pg. 184.

7.17. EMS 12102.2. “Risk assessment memorandum”. Pg. 184.

7.18. EMS 12406.2. “Analysis of the corporate *Covenant*”. Pg. 185.

7.19. EMS 29530. “Meeting on 02/03/2015, ABENGOA strategic plan 2015”. Pg. 185.

7.20. EMS 29531. Retrospective analysis with respect to that provided in the previous financial year. Pg. 186.

7.21. EMS 29540. “Analysis on the Treasury budget for the 2015 financial year”. Pg. 186.

7.22. EMS 24115.4. “Syndicated amortization table FY2014”. Pg. 188.

8: Require **KPMG ASESORES S.L.**, Paseo de la Castellana, 95, 28046 Madrid, to provide the following for inclusion in the records:

A. Comprehensive certificate of the identity of their managers and/or employees, current or past, with their job titles, who participated in the preparation of the "Palmera Project" draft report dated September 24, 2015 (page 723 et seq. from Volume 5 of the "1 Separate Record DP 10-2016") commissioned by ABENGOA at the request of financial entities (Banco Santander and HSBC), initially interested in ensuring the capital increase of ABENGOA, announced in August 2015, and which according to KPMG "a final report was not issued because the management of the entity failed to verify the reality and accuracy of the information provided to prepare the report" (page 724); along with the agreed-upon budget and invoices issued, along with the time sheets including the information of the professionals who participated in their preparation.

B. The internal reports, memoranda, correspondence, emails exchanged, and all other documentation generated and / or provided by ABENGOA for the preparation of the aforementioned draft report, including that which justifies why a final report was not issued.

Let this resolution be brought to the attention of the Public Prosecutor's Office and other parties, advising them that an **INTERLOCUTORY APPEAL** may be filed against it before this Court within THREE DAYS. The appeal may be filed subsequently with the interlocutory appeal or separately. In no event will it be necessary to previously file the interlocutory appeal to file an appeal. An appeal may be filed within FIVE days of notification of the order under appeal, or the resolution of the interlocutory appeal.

So agreed, ordered, and signed by **ISMAEL MORENO CHAMARRO, MAGISTRATE-JUDGE** of Central Court No. 2 of the National Criminal Court. So certified.

THE MAGISTATE-JUDGE THE COURT CLERK

NOTICE: This order was executed immediately thereafter; so certified.

langalo

Langalo Inc.
157 Bowery, Suite 2B
New York, NY 10002
tel. 646 867 1988
contact@langalo.com | www.langalo.com

## CERTIFICATE OF TRANSLATION

I, ROCIO RANA, hereby certify on behalf of Langalo Inc. that we are competent to translate this document, and that the attached translation from Spanish into English is true and correct to the best of our knowledge and belief.

5/12/2020
Date

Signed: [signature]

LANGALO INC. CORPORATE SEAL 2007 NEW YORK

KATHY QUINONES
Notary Public-State of New York
No. 01QU6142270
Qualified in Bronx County
Commission Expires March 13, 20 22

5/12/2020